88  241
d122 322

[No. 14070. In Bank.— March 6, 1891.]

J. H. WOODY ET AL., RESPONDENTS, v. E. BENNETT ET AL., APPELLANTS.

PRACTICE — CONFLICTING EVIDENCE — PRESUMPTION.— In the supreme court, if the evidence is contradictory, that in support of the verdict must be assumed to be true.

CONTRACT — PERFORMANCE — REFUSAL TO PERFORM — CONDITION.— If one who is bound to perform a contract annexes an unwarranted condition to his offer of performance, it is, in effect, a refusal to perform.

SALE FOR CERTAIN PURPOSES — UNFITNESS FOR THE PURPOSE — DAMAGES.— If a stallion is sold for breeding purposes, evidence of his unfitness for such purposes is admissible on the question of damages.

ID. — DAMAGES. — Evidence of the nature and probable duration of the blemishes has relation to his value, and consequently is admissible on the question of damages.

ID. — DAMAGES. — Evidence as to what plaintiff paid for the stallion is admissible on the question of damages.

APPEAL from a judgment of the Superior Court of Tulare County, and from an order refusing a new trial.

LXXXVIII. CAL.—16

The facts are stated in the opinion.

*Charles G. Lambertson,* and *J. M. Damron,* for Appellants.

*Davis & Allen,* for Respondents.

HAYNE, C.— The defendants sold and delivered to the plaintiffs a stallion called "Lord Roxbury," for the sum of three thousand dollars, and gave to them the following contract:—

"TULARE, CAL., Feb. 7, 1887.

"This is to certify that we, E. Bennett & Son, have this day sold Lord Roxbury (1) to J. H. Woody, James Twaddle, I. N. Wright, and Irwin Brothers, and we guarantee that the two small thicknesses on the hocks shall go off if said parties use proper applications and rubbing; and in the case said bunches do not disappear, we will exchange with said parties for any horse of the same price we may have.          E. BENNETT & SON."

The plaintiffs gave evidence tending to show that they used the applications recommended by the defendants, but that the bunches were hereditary and irremovable. On these points the evidence is conflicting. But there is no dispute about the fact that the bunches did not disappear.  And after a time the plaintiffs requested that an exchange be made for another horse, as provided by the contract.  The defendants at first expressed a willingness to make the exchange, and the plaintiffs thereupon selected a horse called "Lord Roxbury, Second," then in Kansas.  But after some correspondence on the subject, the defendants annexed a condition to the right of exchange, which will be considered below. The plaintiffs thereupon brought the present action. The jury found a verdict in their favor for fifteen hundred dollars, and the defendants appealed.

1. There was evidence tending to show that the defendants told the plaintiffs "to use on these bunches

any ordinary simple remedies that is usually used for that purpose," and that the plaintiffs used remedies which were ordinarily used for such purpose, and afterwards employed a veterinary. There was evidence contradicting the foregoing. But at this stage of the case the evidence in support of the verdict must be presumed to be true, and if true, it was sufficient. It must be taken to be the fact, therefore, that the plaintiffs used proper treatment.

2. It is argued that in their letter announcing their selection of another horse (then in Kansas), the plaintiffs made it a condition that he "should arrive all right" at Tulare, and that they had no right to impose such a condition. It might, perhaps, be suggested in this connection that the defendants' senior partner admitted on the stand that it was his understanding that the exchange should be made at Tulare. But it is not necessary to express an opinion upon the merit of the above contention, for the reason that after some correspondence the defendants refused to consent to any exchange except upon a condition which was entirely unwarranted. In a letter to the attorney in whose hands the plaintiffs had placed their claim, the defendants' senior partner says: " We are ready and willing to change, but those parties must take the imported English coach-mare that we imported expressly for them, on their order, at two thousand dollars. That was the price I told them she would cost them delivered at Tulare, and they ordered us to bring her at that price. We are ready and willing to live up to our contract on the horse, and they must do the same on the mare; or if they do not want to take the mare, they must relieve us from the contract to exchange the horse." And in his final letter on the subject he says: "We will most willingly exchange, but remember we will send the mare with the horse." Now, even if it were assumed that the defendants could make the performance by plaintiffs of a separate and distinct

contract a condition of the right of exchange, the fact was, that there was no contract on the part of the plaintiffs in reference to a mare, and this was admitted at the trial. This conduct on the part of the defendants amounted to a refusal to comply with their contract, and supersedes any question as to the place of delivery of the new horse.

3. The evidence justifies the amount of damages awarded. There was evidence tending to show that the plaintiffs purchased the stallion for breeding purposes, and that the defendants knew this; that without the blemishes mentioned he was worth the sum paid for him, viz., three thousand dollars; but that the blemishes were hereditary, and injured his value for breeding purposes, and that with them he was worth under five hundred dollars. A foundation was laid for this evidence in the complaint, and we think that it was admissible, and sufficient to justify the verdict.

4. There are several other matters which may be briefly disposed of.

*a.* It was not error to admit evidence of the expenses incurred by the plaintiffs in treating the horse's legs. It was expressly stated by the court that such evidence was not admitted for the purpose of increasing the damages, but only for the purpose of showing an effort in good faith to remove the blemishes.

*b.* There was no attempt to alter or add to the written contract by parol. The conversations proven bore upon the condition and value of the horse at the time he was sold.

*c.* The evidence as to what plaintiffs paid for the horse was admissible upon the question of damages.

*d.* It was proper to prove that the blemishes affected the horse's success for breeding purposes.

*e.* Evidence as to the nature of the blemishes, their cause and probable duration, had relation to his value, and consequently was admissible on the question of damages.

*f.* The defendants having told the plaintiffs to use any ordinary simple remedies, and the plaintiffs having done so, it was immaterial whether the witness Dickenson thought he could have removed the blemishes by some remedies known only to himself.

*g.* The evidence of the witness Edwards was more favorable to the defendants than otherwise.

*h.* The instruction as to the propriety of the remedies recommended by the defendants was proper. (See first head of this opinion.)

*i.* Evidence of readiness to make the exchange in Kansas was irrelevant, for the reasons stated in the second head of this opinion. We therefore advise that the judgment and order appealed from be affirmed.

BELCHER, C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.