[L. A. Nos. 353, 354. Department Two.—November 16, 1898.]

JOHN C. KOFOED, Respondent, v. SAMUEL B. GORDON et al., Appellants. JOHN C. KOFOED et ux., Respondent, v. JAMES F. COSBY et al., Appellants. SARAH H. TOWNSEND, Intervenor, Respondent.

APPEAL—INTERLOCUTORY DECREE—DISMISSAL.—An interlocutory decree in an action to compel the conveyance of real property is not appealable, and an appeal therefrom must be dismissed.

TENDER—CONDITIONS OF OFFER—WAIVER OF OBJECTIONS.—A tender or offer of performance, must be free from any conditions which the creditor is not bound on his part to perform; yet if it is accompanied by improper conditions which the creditor is not bound to perform, and no objection is made thereto by the creditor, all objections to the improper conditions are waived.

ID.—CONSTRUCTION OF CODE.—Section 1501 of the Civil Code, providing that "all objections to the mode" of an offer of performance not urged by the party to whom the offer is made are waived, is to be liberally construed, and is broad enough to include not only the thing offered, but also the conditions upon which the offer of performance is made to depend.

ID.—TENDER UNDER DECREE ENFORCING TRUST—IMPROPER DEMAND.— REJECTION OF TENDER—WAIVER.—Under a decree enforcing a trust which required a payment to be made by the plaintiff to one of the defendants in satisfaction of a judgment in his favor, and required him thereupon to convey certain land to the plaintiff, a tender of the money could not properly be accompanied by a demand that both defendants should execute an instrument purporting to assign the judgment and to transfer the land; but where such tender was rejected by the defendants, without any objection thereto, other than that they intended to appeal from the judgment, objection to the improper demand accompanying the tender, which might have been obviated by withdrawal thereof, if specifically objected to, was thereby waived.

REDEMPTION FROM FORECLOSURE SALE—IGNORANCE OF TAXES PAID BY PURCHASER—SUBSEQUENT REPAYMENT—ASSIGNMENT OF CERTIFICATE—TRUST FOR MORTGAGOR.—A redemption from a foreclosure sale by persons adjudged to be the constructive trustees of the mortgagor, attempted in good faith by virtue of a judgment lien held in the name of one of them in trust for the other, who had been attorney for the mortgagor, which was effective in all other respects, but made in ignorance of a small amount of taxes paid by the purchaser, the amount of which was subsequently repaid after the time for redemption had expired, whereupon the certificate of purchase was assigned to the nominal holder of the judgment lien, was not thereby rendered invalid. The

assignment of the certificate of purchase conferred no new right, but was a mode of completing the redemption, which equity would have enforced; and the mortgagor may enforce the trust in the property conveyed by the sheriff under the certificate, and compel a conveyance thereof upon reimbursement of the expenses incurred by the trustees.

ID.—INNOCENT MISTAKE IN REDEMPTION—RELIEF IN EQUITY.—When a qualified redemptioner makes an attempt in good faith to redeem within the proper time, and is only prevented from perfecting a valid redemption by an innocent mistake, equity will relieve him from the consequences of such mistake, and allow him to perfect a redemption.

CONSTRUCTIVE TRUST—ENFORCEMENT—ALLOWANCE OF INTEREST.—In an action to enforce a constructive trust and to compel a reconveyance of lands, it is not error for the court to fail to allow interest subsequent to the judgment upon the amount which the defendants were found entitled to receive upon a conveyance of the land, where it appears that a liberal allowance was made by the decree, and they had only to comply with it to obtain their money.

ID.—FINDINGS—PURCHASES FOR BENEFIT OF ATTORNEY.—The findings in an action by a husband and wife to enforce a constructive trust in real property reviewed, and held sufficient to establish a constructive trust in favor of the husband plaintiff as to property purchased under execution against him, for the benefit of one who had acted as his attorney; and also to establish a constructive trust in favor of his wife as to property assigned to her by the husband, subject to a decree enforcing a contract of sale, in reference to which the name of another person advancing money to obtain title under the decree was used as a mere cover to conceal a purchase thereof made for the benefit of such attorney.

ID.—INTERVENTION TO QUIET TITLE—NOTICE OF TITLE.—It is proper in such action to enter a decree quieting title in favor of an intervenor in respect to a lot in controversy which had been conveyed to such intervenor by the plaintiff and others prior to any purchase thereof under execution, by an unrecorded deed, of the existence of which the defendants had actual notice prior to the execution sale.

APPEALS from judgments of the Superior Court of Los Angeles County and from interlocutory decrees and orders denying new trials.   Lucien Shaw, Judge.

The facts are stated in the opinion of the court.

John D. Pope, for Appellants.

T. M. Stewart, and Bicknell & Trask, for Respondents.

Murphy & Gottschalk, for Intervenor.

BEATTY, C. J.—These two cases arise out of the same trans-
actions, and the questions involved depend to a great extent upon
the same state of facts.   They were tried together in the superior
court, and were argued and submitted together here.   A brief
general statement will suffice to show the nature of the main
controversy—a more particular statement will be made in con-
nection with the points in which the cases differ.

On the 30th of June, 1891, a judgment was entered and docket-
ed in the superior court of Los Angeles in favor of the defend-
ant Cosby and against the plaintiff John C. Kofoed, for about
two thousand five hundred dollars, for which sum a lien thereby
attached to all of the real property of said Kofoed in Los An-
geles county, consisting of numerous parcels.   Kofoed was at
that date, and thereafter continued to be, involved and embar-
rassed in his pecuniary affairs.   In this situation he employed
the defendant Gordon, an attorney at law, in his professional
capacity, to assist him in extricating himself from his difficulties,
and authorized him, among other things, to negotiate with Cosby
for a compromise and release of his judgment of June 30, 1891.

Gordon seems to have acted in the interest of Kofoed up to
the summer of 1892, when he claims to have been discharged
from his employment without having been paid for his services.
Acting upon the theory that he was no longer bound by any
professional obligation to Kofoed, on the 25th of October, 1892,
he entered into the following contract with Cosby:

*"In the Superior Court of the County of Los Angeles, State of*
*California.*

"JAMES F. COSBY, }
          Plaintiff, }
      vs. }
JOHN C. KOFOED, }
          Defendant. }

"Judgment in favor of James F. Cosby against John C.
Kofoed, June 30, 1891, $2,504.83.

"James F. Cosby and Samuel B. Gordon agree thus: Cosby
agrees to sell and Gordon agrees to buy the judgment above
named at and for the price of two hundred dollars, to be paid

out of moneys that shall be collected thereon, and not otherwise, as follows: Collections on said judgment are to be applied thus:

"1. To reimburse Gordon for all cash expenses incurred in enforcing said judgment, which expenses it is expected will include costs of only one or more abstracts, sheriff's fees and expenses of execution, and costs of advertising, but nothing for Gordon's services; 2. To pay to Cosby said sum of two hundred dollars, the purchase price of said judgment, to be paid to said Cosby as fast as collected; and 3. The residue of such collections, if any, to belong to Gordon, and to be in full payment of his services in the premises.

"Until paid for as above, Cosby retains the ownership of said judgment, but gives Gordon entire control thereof for all purposes of enforcing the collection thereof. When paid for as above, Cosby is to assign and transfer said judgment, or so much thereof as shall be unpaid, to Gordon. Gordon is to take immediate steps to enforce collection of said judgment and continue the same with energy and diligence, all at his own cost, expense, and labor, to be repaid only as above provided, and without cost, expense or liability to Cosby.

"Dated Los Angeles, October 25, 1892.

"(Signed)   J. F. COSBY.
"S. B. GORDON.

"It is also understood and agreed that in case of sale of land or other property on execution on the above judgment, or in case of redemption, by virtue of said judgment, of lands sold on prior judgment or lien, if the same shall be done for the benefit of the parties hereto, the same shall be done in the name of Cosby, who shall hold the same until payment to him of said two hundred dollars, when he shall transfer the same to Gordon, or his order, but all without expense to said Cosby.

"October 25, 1892.

"J. F. COSBY.
"S. B. GORDON."

Immediately after the date of this contract Gordon caused an execution to issue on the Cosby judgment, which was levied upon a number of parcels of real estate belonging to Kofoed. This property was sold under the execution on December 13,

1892, and bid in by Gordon in the name of Cosby. The price bid was credited on the judgment, leaving a balance still unsatisfied.

A short time thereafter an action numbered 19201 was commenced by Kofoed and wife against Cosby and Gordon in the superior court of Los Angeles for the purpose of having Gordon decreed to be a trustee of the plaintiffs as to all rights acquired by him under and by means of the contract of October 25, 1892, whereby the judgment of June 30, 1891, was assigned by Cosby to Gordon, and to compel Cosby to accept from plaintiffs two hundred dollars in full satisfaction of said judgment. On July 25, 1893, a decree was entered in this action, in which it was ordered and adjudged that Gordon was a trustee for plaintiffs, and for their use and benefit, of all the rights or interests he had acquired by the contract of October 25, 1892, and that plaintiffs be subrogated therein in Gordon's place and stead, provided they paid or tendered to him, on or before the thirty-first day of July, 1893, the sum of seventy-nine dollars and fifty cents, on account of certain expenses incurred by him.

It was further decreed that the defendant Cosby, on payment or tender to him of the sum of two hundred dollars on or before July 31, 1893, should receive the same in full satisfaction of his said judgment, and should convey to John C. Kofoed certain parcels of the land purchased by him at the execution sale of December 13, 1892, and to Lily H. Kofoed, his wife, the remaining parcels so purchased by him, the right to the same having been theretofore assigned to her by her husband.

And it was further specially provided that unless the plaintiffs should pay or tender said sums to Gordon and Cosby on or before the thirty-first day of July, 1893, all their right, title, and interest in and to said contract and premises should cease and determine, and that thereafter neither Cosby nor Gordon should be held as their trustee, or trustee of either of them.

Appeals were afterward taken by the defendants from this decree, and from an order denying their motion for a new trial, but by stipulation these appeals were subsequently dismissed, so that the decree remains in full force, and, so for as it goes, is a final determination of the rights of the parties.

For the purpose of complying with this decree, an assignee of

plaintiffs on the 31st of July, 1893, made a tender of the proper sums of money to be paid to Gordon and Cosby respectively, but, in tendering the money, presented for execution by both of them an instrument purporting to transfer, release, and assign the Cosby judgment, and to quitclaim the various parcels of land sold under the execution and specified in the decree.

This instrument so presented to Cosby and Gordon for signature at the time of the tender of the money was not such an instrument as they, or either of them, were, by the terms of the decree, required to execute. That is to say, the decree did not require them, or either of them, to assign or transfer the Cosby judgment, but only required Cosby to accept two hundred dollars in full satisfaction, and it did not require Gordon to join in the transfer of the lands sold to Cosby at the execution sale. The tender so made was rejected by Gordon and Cosby—rightfully as they claim—wrongfully as claimed by the plaintiffs and found by the court. This contention presents the principal question in both cases, for all the rights of plaintiffs to the lands here in controversy depend upon the decree in case No. 19201, and if they did not make a tender in compliance with that decree they must fail in both actions.

In the complaints it is alleged that when the tender was made it was rejected, with no statement of objection thereto other than that the defendants intended to appeal from the judgment. This defendants by their answers deny, and they allege the fact to be, that at the time said tender was made it was coupled with a demand that the defendants should jointly execute said deed, and that the attorney of the defendants, in their presence, not only stated that they intended to appeal from the judgment, but also stated that the judgment did not require them to execute a deed such as demanded.

The court fails to find whether or not the tender was coupled with a demand that the deed presented should be executed by the defendants jointly, and, if the fact is material, it must be assumed for the purposes of these appeals to have been found in favor of the appellants. The court does find expressly that the tender was rejected, with no statement of objections thereto other than that the defendants intended to appeal from the judgment.

The facts above stated, and all statements of fact hereinafter contained, are taken exclusively from the admissions in the pleadings and the findings of the superior court. And this because, in our opinion, there is sufficient evidence to sustain the findings in all particulars, and not because we hold ourselves precluded from any consideration of the evidence by the objection of respondents that the motions for new trial were not noticed in time—an objection which we find it unnecessary to consider.

Was the tender of July 31, 1893, sufficient to preserve the rights of the plaintiffs under the decree in case No. 19201?

An offer of performance must be free from any conditions which the creditor is not bound on his part to perform. (Civ. Code, sec. 1494.) Here the offer of performance was coupled with conditions which Cosby and Gordon were not bound to perform. But all objections to the mode of an offer of performance which the creditor has an opportunity to state at the time to the person making the offer and which could be then obviated by him, are waived by the creditor if not then stated. (Civ. Code, sec. 1501.) Cosby and Gordon had full opportunity at the time to state their objections to the conditions coupled with the tender, but failed to do so, and the objections, if stated, could easily have been obviated by plaintiffs. Therefore, the objections were waived if section 1501 of the Civil Code applies to the conditions accompanying the offer, and is not restricted, as appellant contends, to objections to the thing offered, and the time and mode of offering it.

This precise question has never been necessarily involved in any previous case in this court, or, if so, it has never been considered and expressly decided, so that we are called upon for the first time to determine what is the true construction of the statute upon this point.

Taking all the sections of the code relating to the subject of tender together, it is evident that the intention of the legislature was to do away with many of the objections by which rights dependent upon offer of performance had been theretofore defeated, and to establish more reasonable and more liberal rules upon the subject. It is, therefore, the duty of the courts to construe any doubtful language of the statute in harmony with the legislative policy.

A tender is not required to be unconditional  On the contrary, it is expressly provided (Civ. Code, sec. 1498) that when a debtor is entitled to the performance of a condition precedent to or concurrent with performance on his part, he may make his offer to depend upon the due performance of such condition. He is forbidden, it is true, to make his offer dependent upon any other conditions, but his obligation in this particular is no more imperative than the obligation to tender the full sum of money due, or the precise personal property or written instruments called for; and there is no more reason for imposing upon the creditor the duty of stating his objections to the thing tendered than there is for requiring him to state his objections to the conditions coupled with the offer. If the person offering to perform is acting in good faith, and makes the mistake of demanding something to which he is not entitled, he ought to be given the same opportunity to recede from such demand that he is allowed for tendering the correct amount where he has tendered too little, or the right thing when he has tendered the wrong thing. There is no consideration of justice or convenience that applies with any greater force to one case than to the other. This principle is the necessary basis of the numerous decisions in which it has been held that an express objection to a tender upon one ground is as clearly a waiver of unauthorized conditions as of other objections not mentioned.

The only real question, therefore, to be considered is whether the language of section 1501 of the Civil Code: "All objections to the mode of an offer," et cetera, is broad enough to include not only the thing offered, but the conditions of the offer, and upon this point we think it is doing no violence to the language of the statute to say that the "mode" of an offer to perform includes the condition upon which the offer of performance is made to depend. We can conceive of no case in which this construction would work an injustice to a creditor seeking only his due, while an opposite construction might in many instances—as in the case before us—deprive a party offering and intending in good faith to perform his obligation of all means of enforcing valuable rights.

Two decisions of this court are cited by appellants, which it is claimed are in conflict with this view.

*Cosby v. Superior Court,* 110 Cal. 45, was *certiorari* to review a judgment convicting these defendants of contempt for refusing certain tenders made subsequent to July 31, 1893, in pursuance of an attempted amendment of the original decree in case No. 19201, extending plaintiff's time for making tender. The only question involved in that case was the validity of the amendatory order, but the writer of the opinion in reviewing the various proceedings in the case took occasion to remark *obiter* that the tender of July 31st was clearly insufficient. This expression of opinion was perhaps justified if it then appeared—as stated in the opinion—that the tender was refused by reason of the condition. But, even if the evidence in that case was the same as the finding here, the point we are considering was not involved and could not have been decided.

In *Woody v. Bennett,* 88 Cal. 243, the action was upon a contract providing for an exchange of horses, and the question was whether plaintiffs had made a proper demand for the exchange before commencing their action. It was held unnecessary to decide that question, because the defendants had positively and repeatedly refused to exchange except upon condition that the plaintiffs would take an imported mare at a valuation of two thousand dollars, which mare they had never agreed to take. The demands and counter-demands in that case were made by letter. It does not appear how many letters were written, but two at least were written by defendants, and first and last they insisted that plaintiffs should take the mare. It does not appear from the report that the plaintiffs specified their objections to this condition, but presumably they did, for the point was not made that they had failed to object, and the case was decided without reference to the effect of such failure. If the point was in the case, it was not made by counsel or considered by the court. It was simply held that the conditional offer of defendants was equivalent to a refusal to exchange and justified plaintiffs in suing, whether their previous demand for the exchange had been proper or not.

We think it clear that neither of these cases sustains the contention of the appellants, or precludes the court from giving to section 1501 of the Civil Code and section 2076 of the Code

of Civil Procedure the liberal construction which we think they were intended to bear.

The superior court did not err in holding that the rights of plaintiffs were preserved by the offer of July 31, 1893. Having thus disposed of the only important question common to both cases, it now becomes necessary to consider them separately with reference to the questions peculiar to each.

In the case numbered on our docket L. A. 353 there are three appeals—one from an interlocutory decree, one from the final judgment, and one from the order of the superior court denying a new trial. The interlocutory decree is not appealable, and the appeal therefrom must be dismissed. Respondent objects to any consideration of the appeal from the order, upon the ground that the notice of intention to move for a new trial was not in time. We do not decide the point raised by this objection, because we are satisfied that the evidence set out in the bill of exceptions is sufficient in any event to sustain the findings of fact; and all other points made by appellants may be considered on the appeal from the judgment.

The action in this case was commenced for the purpose of compelling the defendants to convey to Kofoed certain real property formerly belonging to him, which he had mortgaged to one Pinney, and which had been purchased by Pinney January 6, 1893, under a decree of foreclosure. The Cosby judgment of June 30, 1891, had been transferred as above stated to Gordon, and only partially satisfied by the proceeds of the execution sale of December 13, 1892. The unsatisfied balance gave Cosby—as trustee for Gordon—the right to redeem from the sale under the Pinney foreclosure. This right would expire with the expiration of the lien June 30, 1893, although the six months from the foreclosure sale would not elapse till July 6, 1893. This, it will be observed, was all prior to the decree in case No. 19201, and, of course, prior to the tender made pursuant to that decree. On the thirtieth day of June then, his last day to redeem, Cosby did everything else necessary to effect a redemption, and paid to the sheriff sixteen hundred and thirty-four dollars and thirteen cents, which sum was received by the sheriff as the proper amount of redemption money and paid over to Pinney's attorney, Jones, who received

the same without objection as to the amount, and receipted to the sheriff. But a few days afterward, and after Cosby's right to redeem had expired, Pinney informed his attorney, Jones, that in addition to the amount paid to the sheriff by Cosby there should have been paid five dollars and sixty cents more on account of taxes paid by him on the mortgaged premises subsequent to the foreclosure sale. In consequence of this information Jones had an interview with Gordon, who was acting for Cosby and himself in the matter, in which he claimed that redemption had not been effected—a claim in which Gordon, after some discussion, acquiesced. Whereupon Jones said in substance: "You have attempted in good faith to redeem, and if you will pay those taxes I will have Pinney assign you his certificate of purchase." This proposition was accepted, the money paid, and the certificate of purchase duly assigned by Pinney to Cosby. Upon evidence substantially to this effect the superior court found that the land was redeemed by Cosby and Gordon under the Cosby judgment, and consequently that it was held by them as trustees for Kofoed. The defendants contend, on the contrary, that it was not redeemed under the judgment, but was purchased by Cosby after the time for redemption had expired.

We think the court correctly held that the land was redeemed under the Cosby judgment. It is no doubt true that the right to redeem property sold under execution is purely statutory, and that in order to effect a redemption the statute must be fully complied with. Many cases may be cited in which purchasers have successfully resisted attempts to redeem upon the ground that some requirement of the statute has been overlooked. But it has been held by this court that when a qualified redemptioner makes an attempt in good faith to redeem within the proper time, and is only prevented from perfecting a valid redemption by an innocent mistake, equity will relieve him from the consequences of such mistake, and allow him to perfect the redemption. (*Pownall v. Hall*, 45 Cal. 193.) That was a case in which the redemptioner had by mistake given along with the balance of the redemption money a counterfeit legal tender note for one hundred dollars. His payment was, therefore, *pro tanto* no payment, and by strict law the redemption was not effected; but his attempt in good faith to redeem, which was only prevented by his

innocent mistake, was held to give him a right in equity to perfect the redemption by making up the deficiency.

We can see no difference in principle between that case and this. The mistake here was an innocent mistake. Gordon made an attempt in good faith to redeem. Neither he, nor the sheriff, nor Jones—the agent and attorney of Pinney—knew of the small amount of taxes that Pinney had paid. The sheriff accepted the amount tendered as the proper amount, and Jones accepted it without objection on behalf of Pinney. Upon discovery of the mistake Gordon and Cosby could have enforced their right to perfect the redemption, and the voluntary offer of Pinney, by his attorney, to transfer the certificate of purchase upon payment of the taxes was only another way of perfecting a right enforceable in equity.

These conclusions with regard to the effect of the evidence dispose of the contention of appellants that the court erred in overruling the demurrer to the complaint, and in failing to find upon the allegations of the answer. The only fact alleged in the answer, and not found, is the failure to pay the five dollars and sixty cents of taxes. That fact also appears from the complaint as it does in the evidence, and our conclusion is, that in spite of that fact the redemption was effected.

It is next contended by appellants that the decree of the superior court cannot be sustained except upon the theory that Kofoed owned the judgment against himself at the time of the redemption. We do not see the force of this contention. The theory of the case is, and the fact is, that at the time of the redemption Cosby owned the judgment as trustee for Gordon, who was in turn trustee for Kofoed, and whatever Cosby got under the judgment he held in trust for Kofoed, the ultimate beneficiary, with only a lien thereon for his reasonable expenses incurred in the preservation of the property.

We do not think the superior court erred in requiring Gordon and his counsel to answer on cross-examination the question whether they would have accepted the tender of July 31, 1893, even if it had not been coupled with a demand for a deed. In view of the conflict in the evidence as to what passed at that interview, the determination of Gordon and his counsel not to accept the tender in any case was of some weight in determining

what was actually said. And, besides, the fact elicited was in itself wholly immaterial in the view we take of the transaction, and therefore entirely harmless.

Finally, we think the court did not err in failing to allow interest subsequent to the judgment upon the amount which the defendants were found entitled to receive upon a conveyance of the land to plaintiff. They were allowed interest on all their expenditures up to the date of the judgment, which, in view of the fact that they have deprived the plaintiff of the use and possession of the land, was a liberal allowance. After the decree they had only to comply with it to get their money.

## L. A. 354.

The case presented by appeal numbered L. A. 354 relates to the real property sold December 13, 1892, under the execution issued upon the Cosby judgment as above stated. Of the property sold at that time a portion stood—as to the title—in this way: It had formerly belonged to one Hubbell, who had contracted to sell it to Kofoed and others—Kofoed to have one-half undivided, and the remaining half to go to the other vendees in various proportions. Under this contract one-half of the purchase money had been paid by the vendees, and an action was pending between them and Hubbell, in which the vendees were seeking damages on account of his alleged inability to make a good title, and he was asking a decree of specific performance or foreclosure of their contract of purchase.

In May, 1893, a decree in favor of Hubbell had been entered in this action, whereby the plaintiffs were required to pay to him on or before the ninth day of August, 1893, the sum of seven thousand seven hundred and twenty dollars, in default of which they were to be forever barred and foreclosed of all their right, title, and interest in the premises. On July 15th, on motion of Gordon, attorney for all the plaintiffs except Mrs. Kofoed (who had been substituted for her husband under an assignment of his interest), this decree was so amended as to provide that, in case any of the vendees of Hubbell should fail to contribute their proportions of the sum found due him, their coplaintiffs, or any of them, might pay the same, and should thereupon be entitled to a conveyance of the share of the vendee so defaulting.

This was the situation when the decree of July 25, 1893, in case No. 19201, was entered, and when the tender to Cosby and Gordon was made in pursuance thereof on July 31, 1893. That tender, as above shown, was rejected, and the title to the Kofoed interest acquired by Cosby at the execution sale of December, 1892, was retained by him.

In this complicated condition of affairs Kofoed and wife made an effort to raise half of the money to be paid to Hubbell on August 9th, but failed in their efforts. The superior court finds that on August 5 ,1893, the defendant Gordon had the purpose to deprive plaintiffs of their interests in the lands described in the Hubbell judgment, and that with the intent to embarrass them, and prevent them from raising money to pay their proportion of the amount due Hubbell, they did deter and discourage persons willing and able so to do from advancing said necessary money to said plaintiffs, whereby said plaintiffs were unable to procure said moneys within the time specified in the decree. It is further found that Gordon and Cosby procured one George W. Burton—one of the vendees of Hubbell, and a coplaintiff of the Kofoeds in the Hubbell suit—to permit them to use his name to take for themselves the title to the share coming to Mrs. Kofoed, and that they did use Burton's name, and in his name paid the moneys due from Mrs. Kofoed, taking a conveyance to him of her share, and afterward procuring his conveyance of the same to Cosby, who in all these transactions was acting in the interest and for the benefit of Gordon.

Upon these findings of fact the superior court made an interlocutory decree declaring the defendants trustees of Mrs. Kofoed as to an undivided half of the Hubbell lots, and of John C. Kofoed as to the other lots sold under execution December 13, 1892, and thereupon ordered an accounting of the expenses incurred by defendants in preserving the trust property. The account of these expenses was subsequently settled in the sum of about eight thousand dollars, and thereupon a final decree was entered requiring defendants to convey said property to Kofoed and wife, according to their respective rights, upon payment of the sum found to have been expended in preserving the trust estate.

The defendants appeal from the interlocutory decrees, from the final decree, and from an order denying a new trial. The

appeals from the interlocutory decrees are dismissed for the reason that they are not appealable. The appeal from the order need not be considered further than to say that the evidence in the bill of exceptions supports the findings. All other assignments of error are reviewable on the appeal from the final judgment.

As to the contention of appellants that the findings do not cover the material issues, we think it sufficient to say that in the finding "that in all their transactions tending to acquisition of title to the lands in controversy herein defendants acted in the interest and for the benefit of defendant Gordon," the court has covered the whole ground of dispute. This finding, in connection with the others, negatives the allegation of the answers that Gordon had no interest in the lots except his fee as an attorney. Besides, his fee as an attorney may have been the equivalent of the entire Kofoed interest. And the evidence supports the finding. Their whole course of conduct in relation to this property shows that Cosby and Gordon were acting in concert, and for the benefit of Gordon. The circumstances, without the aid of direct and positive evidence, were sufficient to warrant the court in finding that what Cosby did in the matter was for Gordon's benefit. He was Gordon's trustee as to the judgment which he had transferred, and necessarily also as to these lands which had been purchased at the execution sale under that judgment. The relation between him and Gordon was not merely that of vendor and vendee—it was a relation of trust and confidence voluntarily assumed; and they were both, when acting together in the effort to acquire the lands in controversy by means of that judgment, involuntary trustees of the Kofoeds.

But appellants contend that they did not acquire the Hubbell lands by means of the Cosby judgment. They insist, on the contrary, that Burton acquired the Kofoed interest in those lands by advancing the money to pay for it in accordance with the terms of the decree in the case of *Kofoed et al. v. Hubbell,* and that he thereupon conveyed that interest to Cosby, who holds it entirely freed of any claims of the Kofoeds. This conclusion might follow if the substance of that transaction corresponded with its form. But the findings of the court and the evidence in the case show that Burton's name was a mere cover to conceal

a purchase made by Cosby for Gordon's benefit—a purchase in which he got the benefit of the first payment originally made by Kofoed to Hubbell. The court did not err in declaring Cosby and Gordon trustees of Mrs. Kofoed in the Hubbell lands. As to the other tracts and lots sold at the execution sale—the title to which stood in the name of Kofoed—there can be no question that the decree is correct.

### INTERVENTION OF TOWNSEND.

Sarah H. Townsend was allowed to intervene in this case (L. A. No. 354) for the purpose of quieting her title to one of the lots in controversy. Kofoed and others had sold and conveyed this lot to her in 1886, but her deed had not been recorded when the lot was purchased by Cosby and Gordon at the execution sale in 1892. It was, however, alleged and found that they had actual notice of the previous sale of the lot by Kofoed, prior to the execution sale, and this finding is supported by the evidence. There is no error in the decree quieting her title.

It is ordered that the several appeals from the interlocutory decrees be, and the same are hereby, dismissed in both cases; that the final decrees and the orders denying new trials be affirmed in both cases.

McFarland, J., and Henshaw, J., concurred.