### WALSH v. ERWIN.

(Circuit Court, N. D. California. April 1, 1902.)

No. 12,206.

1. EXECUTION—SALE—REDEMPTION.

Code Civ. Proc. Cal. § 703, requires the sheriff, after having made an execution sale, to receive the amount due on the judgment, with the statutory interest, and execute and deliver to the debtor an acknowledged certificate of redemption, which, when filed of record, is declared to effect a termination of the sale, and restores the debtor to his estate in the property sold. Held, that where a judgment debtor, within the time for redemption, tendered to the sheriff the amount demanded by him for redemption, and received and filed the certificate of redemption, the redemption was effectual, notwithstanding an error of the sheriff in

computing the amount, the debtor having acted in good faith and paid the additional sum due on demand to the sheriff.[1]

**2. MINES AND MINING—LOCATION OF CLAIMS—DESCRIPTION.**

Rev. St. § 2324, provides that the location of a mining claim must be distinctly marked on the ground, so that its boundaries can be readily traced, and that all records of such claim shall contain such a description of the claim or claims located, by reference to some natural object or permanent monument, as will identify the claim. *Held*, that a claim, marked by a blazed tree at the point where the notice of location was posted, and on one of the boundary lines, and three corner stakes placed at stated distances from the notice and from each other, and the distance of the lines leading to and from a corner, at which no stake was placed, was accurately stated, was sufficiently designated to enable a surveyor to ascertain the exact limits of the location, and was therefore sufficient.

In Equity.

A. H. Ricketts (S. C. Denson, of counsel), for complainant.
Goodwin & Webb and L. N. Peter, for respondent.

MORROW, Circuit Judge. This is a suit to determine the right of possession to certain placer mining ground in Plumas county, Cal., claimed by the complainant as the Cascade placer claim, and included in the respondent's application for United States patent upon the Castle Hill placer claim. The respective counsel have entered into a stipulation of facts herein, substantially as follows: The suit was instituted by James T. Walsh, a citizen of Minnesota, against James P. Welch, a citizen of California. Upon the death of the respondent, R. L. Erwin, as administrator of the estate of said Welch, and also a citizen of California, was, by proper proceedings, substituted as respondent herein. On or about May 14, 1877, one Frank Terry and seven associates, all citizens of the United States, entered upon unoccupied public land, they having previously discovered mineral thereon, and posted upon said premises the following notice:

"Notice of Location.

"Notice is hereby given that we, the undersigned, having fulfilled the condition required by the mining laws of the United States and those of this district, and having complied with the usual customs in such matters, do each claim twenty acres of this ground for placer or gravel mining, being a total of one hundred and sixty acres. These claims shall be known as the Cascade Gravel Mining Company, and are situated on the northern side of Grizzly Mountain, in Plumas county, —— township, about three miles north of the Alturas mine, and are bounded and described as follows: Beginning at this notice, which is posted on a blazed tree, and running south three hundred feet to a stake; thence running west thirteen hundred and twenty feet to a stake; thence running north five thousand two hundred and eighty feet; thence running east thirteen hundred and twenty feet to a stake; thence running south four thousand nine hundred and eighty feet to this notice.

"Located this 14th day of May, 1877.

| "Frank Terry. | S. R. Dawson. |
|---|---|
| "S. Galbreath. | M. J. Walsh. |
| "J. J. Swiggart. | E. A. Heath. |
| "T. J. Johnson. | G. W. Moreton." |

On the same day said Frank Terry and his associates blazed a pine tree, which stands 300 feet north of the southeast corner of the premises described in said notice, planted a stake at the southeast

[1] See Execution, vol. 21, Cent. Dig. § 858.

corner of said premises, planted another stake at the southwest corner of said premises, and still another stake at the northeast corner thereof, for the purpose of locating said premises as a placer claim. The above notice was duly recorded in the office of the county recorder on the 18th day of May, 1877, and on the 8th day of June, 1877, the said Terry and his associates made, executed, and delivered to the Cascade Water & Mining Company a deed of the following premises: "The mining property known as the 'Cascade Gravel Mine' on the east side of Grizzly Mountain, and being 160 acres of ground," situated in Plumas county, Cal. On the 20th day of March, 1896, the Cascade Water & Mining Company conveyed to the complainant herein "all that real property situated in the county of Plumas, state of California, known as and commonly called the 'Cascade Mining Claim,' and all appurtenances, including water claim, water rights, ditches, and flumes"; being the same claims above referred to. This deed was ratified by the holders of more than two-thirds of the capital stock of said corporation, and was recorded on the 30th day of March, 1896. More than $100 worth of work, labor, and improvements have been done and performed by the successors in interest of the said Terry and his associates upon the premises here in dispute during each and every year since May 14, 1877, except for and during the year 1894, when a notice of intention to hold and work said claim was filed in the recorder's office, agreeably to the act of July 18, 1894, amending section 2324 of the Revised Statutes. The aggregate value of the work, labor, and improvements done and performed upon the said premises during the said time by said parties is of the value of more than $6,000. On April 12, 1894, one David R. Brown commenced an action in the superior court of said county against said Cascade Water & Mining Company, to foreclose a miner's lien for work done by him as a miner upon said premises, and on April 9, 1895, a judgment was rendered in his favor for the sum of $279.90. Thereafter, on May 4, 1895, the said mining ground was sold by the sheriff, in pursuance of an order of sale upon said judgment, to one A. E. Whitney, for the sum of $318.90, and the sheriff's certificate of sale delivered to said Whitney therefor, describing the premises sold as "that certain lot of placer mining claims situated on or near Little Grizzly creek in section 1, township 24 north, range 11 east, Mt. Diablo meridian, county of Plumas, state of California, generally known as and called 'Cascade Placer Mining Claims,' and all appurtenances." Within six months from the date of said sale, on the 4th day of November, 1895, P. R. Walsh, as president of said Cascade Water & Mining Company, applied to the sheriff of said county to redeem said mining ground so sold as aforesaid. Thereupon the said sheriff, with the assistance of one U. S. Webb, an attorney at law, estimated the amount necessary to redeem said mining ground from said sale, by computing the interest on the sum of $279.80 recited in said judgment, at the rate of 2 per cent. per month from May 4, 1895, and then and there stated to said Walsh that the sum of $313.37 was the amount necessary to be paid for the purpose of redeeming said mining ground from said Whitney. Said Walsh, as president, and

for and on behalf of said corporation, then and there paid to said sheriff the said sum of $313.37, and received from said sheriff the following certificate:

"State of California, County of Plumas—ss.: I, J. S. Bransford, sheriff of the county of Plumas, state of California, do hereby certify that on the 4th day of November, A. D. 1895, the Cascade Water and Mining Company, a corporation, judgment debtor under the judgment in the action hereinafter mentioned, in due form of law tendered and paid to me the sum of $313.37, being in full payment of the purchase price paid by the purchaser at the sale of the real property hereinafter described, made by me on the 4th day of May, A. D. 1895, under the decree and foreclosure and sale issued to me out of the superior court of the county of Plumas, state of California, in the action of D. R. Brown vs. the Cascade Water and Mining Company, a corporation, et al., including two per cent. per month interest thereon, up to the time of redemption; that thereupon I received said sum of money so tendered and paid as aforesaid, and have granted and executed to said Cascade Water and Mining Company, a corporation, this my certificate of redemption of said property, in conformity with the statute in such case made and provided. The premises so redeemed or intended to be redeemed are described as follows, to wit: That certain lot of placer mineral claims situated on and near Little Grizzly creek, in section 11, in township No. 24 north, of range No. 11 east, Mount Diablo base and meridian; all in the county of Plumas, state of California, generally known as and called the 'Cascade Placer Mining Claims,' and all appurtenances.

"In witness whereof, I have hereunto set my hand this 4th day of November, A. D. 1895.          J. S. Bransford, Sheriff."

This certificate was duly recorded on November 4, 1895. The amount actually necessary to be paid for the purpose of redeeming said property was in fact $357.16, and on or about November 17, 1895, the said sheriff demanded from said Walsh the further sum of $43.79, and on December 7, 1895, said Walsh paid said further sum to said sheriff. . On that day the said sheriff tendered the balance so paid him to the said U. S. Webb, as attorney for the said Whitney, and said Webb then and there refused to accept or receive the same, and demanded that said sheriff execute his deed to said Whitney, as purchaser of said premises. The said sheriff refused to execute said deed. On December 10, 1895, said Whitney commenced mandamus proceedings in the superior court to compel the execution of said deed, the only parties to said suit being the said Whitney, as plaintiff, and the said sheriff, as defendant. Said Walsh filed a petition with said court for leave to intervene in said mandamus proceeding, which was by the court denied. This order denying intervention has not been appealed from or modified. After due proceedings had, a judgment was rendered directing said sheriff to execute and deliver to said Whitney a deed to said property, and such a deed was accordingly executed on January 2, 1896. No appeal has been taken from said judgment, nor has it been modified or set aside. Thereafter, and before February 1, 1896, the said Whitney conveyed to said J. P. Welch, original respondent herein, all the right, title, and interest acquired by him in and to said mining premises. It is stipulated that the said Webb had merely the general authority of an attorney at law under a general retainer for said Whitney, and was never authorized by said Whitney to estimate the amount of money required to redeem the said property from said sheriff's sale, but assisted in

such estimation merely at the request of the said sheriff. It is further stipulated and agreed that the following facts appear: On October 31, 1893, J. P. Welch, original respondent herein, with several associates, posted notices of location upon ground overlapping the premises claimed by complainant, and marked the exterior boundaries of three claims, called, respectively, the "Alex," "Alberta," and "Whitney" placer mining claims. Copies of these notices of location were duly recorded. Prior to February 1, 1896, the said locators, other than J. P. Welch, conveyed to J. P. Welch the premises covered by these locations. On or about February 6, 1895, said J. P. Welch applied to the government of the United States for a patent upon said three claims, under the name and style of "Castle Hill Mining Claim," and notice of such application was published by the register of the United States land office for the district in question. It is admitted that $500 had been expended on these premises by Welch and his grantors. Within the time allowed by law the complainant filed his protest and adverse claim in said land office, and within 30 days after the filing of said adverse claim brought suit in this court for the determination of his right to the mining ground claimed to have been located and worked by him as the Cascade placer mining claim. It will thus be seen that the respondent claims the premises in dispute through two sources of title, namely, the sheriff's deed of the Cascade placer claim, and the possessory title acquired from the mining locations made by Welch and his associates.

With respect to the sheriff's deed of January 2, 1896, under which the respondent claims title to the Cascade placer mining claim, it is sufficient to say that prior to the execution of that deed by the sheriff the Cascade Water & Mining Company, complainant's predecessor in interest, had redeemed the property from the sale made by the sheriff on May 4, 1895. The objection that the amount paid in the first instance was not sufficient to effect a redemption of the property under the statute cannot be sustained in an equity proceeding of this nature. The sheriff was the agent created by the statute to receive the amount due upon the judgment with the statutory interest thereon, and execute and deliver to the debtor a duly acknowledged certificate of redemption, which, when filed of record, effects a termination of the sale and restores to the debtor his estate. Section 703, Code Civ. Proc. Cal. The complainant herein paid the amount named by the sheriff within the time allowed for redemption of the property, and received from him the statutory certificate of redemption. The amount was later found to be insufficient, owing to an error in computing the interest upon the principal sum. The error was entirely innocent in its nature, and was corrected as soon as discovered; and the mere circumstance that by reason of this error in computation the full amount was not paid within the statutory period should not devest the debtor of his estate, when it is so clearly shown that he acted in good faith, and without delay, in his efforts to effect a redemption. It is well settled in this state that, "when a qualified redemptioner makes an attempt in good faith to redeem within the proper time, and is only prevented from perfecting a valid redemption by an innocent mistake, equity will relieve him from the consequences

of such mistake, and allow him to perfect the redemption." Pownall v. Hall, 45 Cal. 193; Kofoed v. Gordon, 122 Cal. 314, 324, 54 Pac. 1115.

The respondent contends that complainant had no right to the possession of the mining ground claimed to have been located as the Cascade placer mining claim; that the location was faulty, and therefore void; and that in consequence thereof the land was open to location at the date of location of the said Alex, Alberta, and Whitney claims by the respondent's grantors. Section 2324 of the Revised Statutes provides that:

"The location must be distinctly marked on the ground, so that its boundaries can be readily traced. All records of mining claims hereafter made shall contain the name or names of the locators, the date of location, and such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim. ＊ ＊ ＊"

In the stipulated facts it appears that complainant's grantors, for the purpose of locating the premises in dispute as a placer claim, blazed a pine tree standing 300 feet north of the southeast corner of said premises, planted a stake at said southeast corner, another stake at the southwest corner, and still another stake at the northeast corner. It also appears that, in the notice of location posted on said premises and recorded in the office of the county recorder, the ground claimed to be located was described as "situated on the northern side of Grizzly Mountain in Plumas county, about three miles north of the Alturas mine, and bounded and described as follows: Beginning at this notice, which is posted on a blazed tree, and running south 300 feet to a stake; thence running west 1,320 feet to a stake; thence running north 5,280 feet; thence running east 1,320 feet to a stake; thence running south 4,980 feet to this notice." The requirements of the statute as to date of location and names of locators were fully complied with in said notice. From the description of the premises on record, and the marks on the ground, could the boundaries of the location attempted be readily traced? In Book v. Mining Co. (C. C.) 58 Fed. 106, 114, a similar state of facts was presented, and the question of the sufficiency of marking a mining location was very thoroughly considered. The court there said:

"The law is certainly complied with whenever stakes and monuments are so placed upon the ground that the boundaries of the location can be traced with reasonable certainty, and without any practical difficulty. The object of the law in requiring the location to be marked on the ground is to fix the claim,—to prevent floating or swinging,—so that those who in good faith are looking for unoccupied ground in the vicinity of previous locations may be enabled to ascertain exactly what has been appropriated, in order to make their locations upon the residue. We concede that the provisions of the law designed for the attainment of this object are most important and beneficent, and that they ought not to be frittered away by construction. But it must be remembered that the law does not, in express terms, require the boundaries to be marked. It requires the location to be so marked that its boundaries can be readily traced. Stakes at the corners do not mark the boundaries. They are only a means by which the boundaries may be traced;' but they are sufficient for that purpose."

And in Mining Co. v. Willis, 127 U. S. 471, 480, 8 Sup. Ct. 1214, 32 L. Ed. 172, the supreme court of the United States, in passing upon the sufficiency of a description contained in a location certificate, stated the requirements as "sufficiently plain and distinct to enable the

sheriff, in case of a recovery, to execute a writ of possession, or to enable a surveyor to ascertain the exact limits of the location."

Applying these requirements to the case at bar, we find a blazed tree at the point where the notice is posted and on one of the boundary lines, and three corner stakes at stated distances from the notice and from each other. One corner stake appears to have been omitted,—whether from the nature of the surface of the ground or not is not shown,—but the distance of the lines leading to and from that corner are accurately stated. A surveyor would certainly be enabled without difficulty "to ascertain the exact limits of the location," and a prospector could easily ascertain the lines of the ground staked off. The act of location, then, appears to have been fully within the requirements, and the right of possession was accordingly vested in the locators, not to be devested by the removal or obliteration of the stakes, monuments, marks, or notices, without the act or fault of the locators, during the time they continued to perform the necessary work upon the claim and to comply with the law in all other essential respects. Jupiter Min. Co. v. Bodie Consol. Min. Co. (C. C.) 11 Fed. 667; McEvoy v. Hyman (C. C.) 25 Fed. 598. It is not disputed that the complainant has performed the necessary work under the statute upon the premises in question for a period of about 16 years prior to the overlapping locations of the respondent, and paid the taxes thereon. This, under the laws of California, would give the complainant a prescriptive right to the premises that would avail against anyone seeking to initiate a new claim to the same property,—in fact, against all but the government.

Let a decree be entered for the complainant.