## FRED ACKERMAN v. C. J. MADDUX ET AL.

(143 N. W. 147.)

**Offer — stipulation — time limit — released.**

1. When an individual makes an offer by mail, stipulating for an answer by return of the mail, the person making such offer is released if the stipulation is not complied with.

**Offer — real estate — sale — acceptance — return mail.**

2. A letter offering to sell a piece of real estate for a certain sum, and ending with the request, "Let me know by return mail," demands an acceptance by such mail, and in the absence of such the offerer will be released.

**Land contract — purchaser — taxes — condition precedent — specific performance — tender — default.**

3. Where the payment of taxes is not made a condition precedent to the right of the purchaser under a land contract to rely upon the same, and prior to the bringing of an action for specific performance no attempt has been made to forfeit the contract on account of such failure, and upon the trial plaintiff tenders and offers to pay into court the amount of such taxes, such prior default will not defeat an action for specific performance.

**Tender — amount — shortage — objection — when to make.**

4. When in such a case the tender is lacking in a few cents of interest, the doctrine of *de minimis non curat lex* will apply. Under § 5260, Rev. Codes 1905 a shortage of 12 cents in a tender of payment under a land contract will not invalidate such tender where no objection is made at the time which is based upon such shortage.

**Contract — sale — agreement — third person — valid — specific performance.**

5. Where a contract provides that "no sale, transfer, assignment, or pledge of this contract or of any interest therein, or of or in the premises therein described, shall be in any manner binding upon the party of the first part, unless said party of the first part shall first consent thereto by writing hereon," an agreement by the purchaser to sell the property to a third person will not defeat his right to specific performance.

**Independent covenant — breach — condition — material inducement — specific performance.**

6. A breach of an independent covenant, as distinguished from a condition which is not a material inducement to the contract, is not a bar to specific performance.

**Purchaser — contract — agreement — third person — title — vendee — parties.**

7. Purchasers who have not assigned their contract of purchase, but who have agreed to sell to another on other and different terms, are still obligated to deliver good title to their vendee, and an action for specific performance against their vendors is properly brought in their names.

**Investing agent — knowledge — principal.**

8. Recently acquired knowledge of an investing agent will be imputed to his principal.

Opinion filed September 17, 1913.

Appeal from the District Court for Eddy County, *Coffey,* J.

Action to compel the specific performance of a contract for the purchase and sale of real estate, and to acquire the title to said property.

Judgment for plaintiff. Defendants appeal.

Affirmed.


Statement by BRUCE, J.

This is an action to compel the specific performance of a contract for the purchase and sale of lots 2, 3, and 4 of the original town plat of New Rockford, Eddy county, and to acquire the title to said property. The selling price was $600, of which all but $70 was paid by the plaintiff before the bringing of this action, this balance (lacking perhaps 12 cents) being tendered on September 14, 1910, and, on being refused, being immediately deposited to the credit of the defendants. The action was commenced on the 10th day of October, 1910. On November 8, 1910, the defendants, C. J. Maddux and Catherine Melrose, answered, admitting the making of the contract, but denying the other material allegations of the complaint. The answers admitted the tender of $71, but denied that the same was in full payment of the balance of the purchase price. They also further alleged that on September 1, 1910, and before the full purchase price of said lots was paid by the plaintiff, the plaintiff and the defendant Maddux entered into an agreement whereby the defendant Maddux was to pay plaintiff $230 for all of his right, title, and interest in the property, which said amount the defendant Maddux stated he was ready and able and willing to pay at any time, and which said amount he deposited in the district court for the use and benefit of the plaintiff. The answers further alleged that immediately after the making of said agreement, and on September 9, 1910, the defendant Maddux sold and transferred said property to the defendant Catherine Melrose for a valuable consideration; and that thereafter and on or about September 15, 1910, plaintiff attempted to convey said property to one E. M. Stitzel, and caused a warranty deed to said Stitzel to be placed on record, and then and there entered into a conspiracy for the purpose of cheating and defrauding the defendant Maddux out of the property, and for the purpose of clouding the title; that such attempt to transfer, without the consent of the defendant

Maddux, was a violation of the contract, and that the defendant Maddux "now elects and declares said contract forfeited." The answers further allege that prior to September 5, 1910, the "defendant C. J. Maddux entered into the possession of said property, and was and has been in possession of said property at all .times since said date, and made valuable improvements upon said property by plowing and cultivating the same," and that the purchase by the said Catherine Melrose was "made in the ordinary course of business for value received, and without any notice of any rights, claims, or interest of the plaintiff." On November 1, 1911, and one day before the case was actually tried, the defendant Maddux also asked leave to file an amended answer, which set up the facts above stated, and in addition alleged that plaintiff had failed to pay the taxes for the years 1908, 1909, 1910, and 1911; that said lots were advertised for sale for delinquent taxes, and that the defendant Maddux was forced and compelled to pay and redeem said property from the said delinquent taxes and paid therefor the sum of $30.59 to protect said property, and alleged that the failure of plaintiff to pay such taxes constituted a default in the conditions of said contract, by reason whereof the said defendant (and in said amended answer) elected and declared said contract null and void. The evidence, however, discloses that the failure of the plaintiff to pay such taxes was not discovered by the defendant Maddux until November 10th, that is to say, thirty days after the bringing of the suit, twelve days before the trial, and eleven days before the attempt to file the amended answer, and that the same were not actually paid until November 18th. The record also shows that immediately upon the attempted filing of the said amended answer the plaintiff brought the said sum of $31, and deposited the same with the clerk for the benefit of the defendant. Leave to file this amended answer was denied. There is no evidence in the record of any notice or attempt at cancelation of said contract by the defendants or either of them prior to the filing of the answers in the case, either as provided by §§ 7494 and 7495, Rev. Codes 1905, or the terms of the contract, or in any other way. The trial court decreed "that said plaintiff have and recover judgment against said defendants and each of them; that all their right, title, and interest in and to said described real premises be decreed to be in said plaintiff,

Fred Ackerman; and that said plaintiff, Fred Ackerman, is entitled to the immediate possession of said described real premises and the whole thereof, free and clear of all right, interest, claim, and demand of said defendants, and each and both of them; and that as to them title be quieted in all things in the plaintiff herein." It further decreed that plaintiff, Fred Ackerman, should recover judgment against the said defendants for his costs and disbursements, and that the said C. J. Maddux be directed and required to make, execute, and deliver to the said plaintiff, Fred Ackerman, a good and sufficient warranty deed conveying title to said described premises to the said Fred Ackerman, and "that the judgment herein be of the same force and effect of a warranty deed of conveyance of title from said defendant C. J. Maddux, to said plaintiff, Fred Ackerman, and the same to contain the usual covenants of said defendant C. J. Maddux, to said plaintiff, Fred Ackerman; that the said C. J. Maddux, himself, and his heirs and assigns, are well seised in fee of the land and premises aforesaid, and that the said C. J. Maddux has good right to sell and convey the same to said plaintiff; that the said land and premises described are free from lien or encumbrance caused or permitted by any act of said C. J. Maddux; that the said plaintiff, Fred Ackerman, and his heirs and assigns, shall be and remain in the quiet and peaceable possession of said described premises; and that said C. J. Maddux will warrant and defend the title to said plaintiff, Fred Ackerman."

From such judgment this appeal was taken and a trial *de novo* is asked.

*Maddux & Rinker,* for appellants.

The plaintiff's offer and defendant's acceptance are well established. North Dakota Horse & Cattle Co. v. Serumgard, 17 N. D. 466, 29 L.R.A.(N.S.) 508, 138 Am. St. Rep. 717, 117 N. W. 453.

A purchaser in default, who tenders at time of trial, is too late. Partial payments upon a conditional sale contract, after default, cannot be recovered. Pfeiffer v. Norman, 22 N. D. 168, 38 L.R.A.(N.S.) 891, 133 N. W. 97.

Specific performance cannot be enforced against a party to the contract unless it is just and reasonable. Rev. Codes, § 6615, sub. 2.

*R. G. McFarland,* for respondent.

Specific performance will be compelled in any case where the terms of the contract are clear, mutual, and there is adequate consideration, and where the failure to perform cannot be adequately relieved by pecuniary compensation. Rev. Codes 1905, §§ 6609, et seq.; Plummer v. Kelly, 7 N. D. 88, 73 N. W. 70; Ross v. Page, 11 N. D. 458, 92 N. W. 822; Pederson v. Dibble, 12 N. D. 572, 98 N. W. 411; Block v. Donovan, 13 N. D. 1, 99 N. W. 72; Hunter v. Coe, 12 N. D. 505, 97 N. W. 869; 36 Cyc. 550, et seq.

Defendant cannot now be heard to complain, for he has never attempted to cancel or forfeit the contract. Rev. Codes 1905, § 7525, and cases cited; Rev. Codes 1905, §§ 7494, et seq.

The offer plaintiff made was for a cash consideration, and required acceptance by return mail. The offer has never been accepted or complied with, and there was consequently no contract. Weaver v. Gay, 31 W. Va. 736, 3 L.R.A. 94, 8 S. E. 743; Maclay v. Harvey, 90 Ill. 525, 32 Am. Rep. 35, and note; Mactier v. Frith, 6 Wend. 103, 21 Am. Dec. 262; Eliason v. Henshaw, 4 Wheat. 225, 4 L. ed. 556, and note; Haas v. Myers, 111 Ill. 421, 53 Am. Rep. 634; Lawson, Contr. § 18; 35 Cyc. 52, 53, note 47.

The plaintiff was released from such offer. Rev. Codes 1905, §§ 5237, 5264; 30 Cyc. 1207, 1208, note 99 and cases cited.

The law imputes to the principal knowledge of all material facts known to his agent, whether or not such agent actually informs his principal. Bierce v. Red Bluff Hotel Co. 31 Cal. 165; Hunter v. Watson, 12 Cal. 363, 73 Am. Dec. 548; 31 Cyc. 1587, Div. (4) note 40, cases cited; 20 Cyc. 486, div. (VII) (II) d.

BRUCE, J. (after stating the facts as above). Defendants first seek to defeat the action of plaintiff by showing that after the execution of the real estate contract, plaintiff sold the premises in question to the defendant Maddux, and that thereby all rights under the contract were waived. We find, however, no support for this contention in the evidence. All we find, indeed, is an offer to sell which was not accepted

according to its terms, and which was therefore a nullity. The offer to sell was contained in the following letter:

Williston, N. D., Sept. 5, 1910.

Mr. C. J. Maddux,
    New Rockford, N. Dak.
Dear Friend, Mr. Maddux:—

I want to sell them lots that you sold me. I am mighty hard up for money and if I could sell them back to you I would do so at a great discount. I have seven lots besides the four you sold me and I have to borrow money here to pay the taxes on them, and they are not bringing in anything and I need every dollar I made here this year to live on. I had in a little over 60 acres in crop. I have threshed and I have not any more than I seed, feed and other expenses from the whole crop.

The other lots I got is enough for me and this place. I will sell the four you sold me to you only for half price, $300. I will take $230 cash and you keep the balance of $65 or $70 dollars which I owe you. I will sell them anyway, and I want to sell them to you.

I kindly wish you would send me a statement of how we stand as the way it is in it worry me considerable. I want to straighten it up as soon as possible.

If I could sell them I would immediately build me a better house, and buy me a cow and live like a white man, and as I will have feed and seed it would put me in better shape for next year.

Let me know by return mail.

Yours very truly,

Fred Ackerman,
Williston, N. Dak.

This letter was dated September 5, 1910, and was received by the defendant Maddux on September 6 or 7, 1910. On September 9, 1910, the defendant Maddux wrote a letter accepting the offer. It will be noticed that by its terms the offer demanded an acceptance by return mail, and there is no pretense that such was forthcoming. There was therefore no acceptance, and the offer is eliminated in law from the record and is as if it had never been made. That this is the settled law there can, we believe, be no controversy. In the case of Maclay v. Har-

vey, 90 Ill. 525, 32 Am. Rep. 35, one John Harvey wrote to a Miss Maclay as follows: "I write to inquire if you intend to work at millinery this season and if you have made any arrangements or not. If you have not, can you take charge of my stock this season, and if you can agree I would want you for a permanent trimmer. Please notify me by return mail and terms and we can confer together." To this letter an answer was sent stating terms. On March 21st Harvey again wrote: "Your favor was received in due time, and contents noted. You spoke of wages at $15 per week and fare one way. . . . I will give you $15 per week, and pay your fare from Chicago to Monmouth, and pay you the above wages for your actual time here in the house at that rate per season. I presume that the wholesale men will allow you for your time in the house. *You will confer a favor by giving me your answer by return mail.*" This letter was received on the afternoon of March 22d, and an acceptance was written on a postal card on the following day, March 23d. The card, however, was given to a boy to mail, who delayed in the matter so that it was not received until two days after March 25th. The court, in holding that there was no acceptance and therefore no contract, said: " 'Where an individual makes an offer by post stipulating for, or by the nature of the business having the right to expect, an answer by return of post, the offer can only endure for a limited time, and the making of it is accompanied by an implied stipulation that the answer shall be sent by return of post. If that implied stipulation is not satisfied, the person making the offer is released from it.' . . . It is clear here that the nature of the business demanded a prompt answer; and the words, 'You will confer a favor by giving me your answer by return mail,' do in effect stipulate for an answer by return mail." This case follows the leading English case of Dunlop v. Higgins, 1 H. L. Cas. 387, 12 Jur. 295, and is supported by the great weight of authority both in England and in America. See 35 Cyc. 52, 53, and notes; Eliason v. Henshaw, 4 Wheat. 225, 4 L. ed. 556.

We next come to the question as to whether specific performance will lie in this case, and this also involves the question whether the court erred in refusing to permit the filing of the amended answer, which set up the nonpayment of the taxes and sought to declare the contract void on account thereof. Counsel argues in his brief that there is no offer

in the complaint to pay for improvements. He also asks the question: "Can a condition sale purchaser remove a building from the property, and fail to pay the taxes for four years, and then prevail in an action for specific performance ?" On an examination of the record, however, we find no evidence of the removal of any building by the plaintiff, or of the making of any permanent improvements by the defendant. Defendant, it is true, testifies that he plowed and cultivated the lots, but we have yet to learn that plowing and cultivating town or village lots constitutes a permanent improvement. As far as the removal of the building is concerned, the only evidence to be found in the record is that "at the time of the sale of the lots by C. J. Maddux to the plaintiff there was a building, a storehouse, on said lots, worth and of the value of $100, and that said building, since the sale thereof, has been removed from said lots." The evidence shows that on or about September 9, 1910, the defendant, C. J. Maddux, himself went into possession of said premises and plowed and broke the same. There is no evidence as to who removed the building, and as to when it was removed, and whether since or before the occupation by the defendant Maddux. So, too, the value of the plowing and cultivating, even if it were a permanent improvement, is not given.

A point is also made that the tender of $71 was 12 cents short, also that the deposit of $31 for taxes did not include a few days' interest which would accrue from the time of the payment by Maddux to the time of the deposit. The rule of *de minimis non curat lex* applies in such cases. Kullman v. Greenebaum, 92 Cal. 405, 27 Am. St. Rep. 150, 28 Pac. 674. So, too, there is no evidence that these tenders were refused because of the shortage, or that the matter was considered at all. There is no testimony as to any refusal to accept the $31 taxes. As far as the $71 is concerned, the refusal was unqualified. The testimony of Mr. Maddux is as follows: "Q. At the time Exhibit C, the tender of $71, was made to you, you made no statement or any objection or reason why you did not accept that at that time ? A. No, but I refused to do it." The defendants cannot now take advantage of the trifling shortages, if any there were. Sec. 5260, Rev. Codes 1905; Latimer v. Capay Valley Land Co. 137 Cal. 286, 70 Pac. 82 (construing § 1501, Civil Code of California, from which § 5260, Rev.

Codes 1905, N. D. is taken); Kofoed v. Gordon, 122 Cal. 314, 54 Pac. 1115; Cleveland v. Rothwell, 54 App. Div. 14, 66 N. Y. Supp. 241.

As far as the refusal to permit the filing of the amended answer is concerned, we think that no prejudicial error was committed by the trial court. The plaintiff deposited in the trial court the sum paid by the defendant Maddux, perhaps lacking a few cents of interest. The payment of taxes was not, by the contract, made a condition precedent to the right of the plaintiff to a specific performance or to rely upon the contract, and it is usually only such breaches that will defeat a recovery. 36 Cyc. 700, 701. The nonpayment of taxes was, it is true, a ground for forfeiture, but in the case at bar the statutory notice of cancelation was not given (see §§ 7494, 7495, Rev. Codes), nor was the notice given which was provided for in the contract, nor any attempt at cancelation until after the suit was commenced.

There is also nothing in the point that the plaintiff sold his interest in the land to the witness Stitzel before the bringing of the suit. Such a sale was not prohibited by the contract, nor was the retention of the property made a condition precedent to its enforcement. All that the contract stated upon the point was that "it is further agreed that no sale, transfer, assignment, or pledge of this contract, or of any interest therein, or of or in the premises therein described, shall be in any manner binding upon the party of the first part, unless said party of the first part shall first consent thereto by writing hereon." The agreement, in short, merely sought to render such a sale void without the consent of the defendant Maddux, and not to make it the subject for a forfeiture of the contract. Even if such a sale had been directly forbidden, it would hardly have precluded a recovery in this case. "A breach of an independent covenant, as distinguished from a condition which is not a material inducement to the contract, is not a bar to specific performance." 36 Cyc. 700, 701; Grigg v. Landis, 21 N. J. Eq. 494; Hunt v. Spencer, 13 Grant, Ch. (U. C.) 225. "Purchasers who have not assigned their contract of sale, but who have agreed to sell to another on other and different terms, are still obligated to deliver good title to their vendee, and their interest in the subject-matter has not ceased, and an action for specific performance is properly brought in their names." 36 Cyc. 760; Bittrick v. Consolidated Improv. Co. 51 Wash. 469, 99 Pac. 303. In the case at bar, though there was a warranty

deed to Stitzel, there was an accompanying agreement or memorandum signed by the said Stitzel, which provided that Stitzel still owed the plaintiff "on account thereof the sum of $179.42, which amount is said to be paid by the giving of a promissory note to the said Fred Ackerman, with real estate security due on or about October 1, 1911, the same to be given by me as soon as deed to said lots are obtained from C. J. Maddux to said Fred Ackerman, transferring the title to said Ackerman."

Defendants also complain of the action of the court in decreeing the execution of a warranty deed and making the judgment operate as such. We can see no error in such action. It was simply requiring the defendant to live up to the terms and conditions of his contract.

There is no justification to be found in the evidence, for the statement that the defendant Catherine Melrose was an innocent purchaser of the property for value. Both she and the defendant Maddux testified positively that the defendant Maddux was her investing agent, and that she trusted entirely to his judgment. In such a case the recently acquired knowledge of her agent would be imputed to her.

The judgment of the District Court is affirmed.