[S. F. No. 135.   In Bank.—November 13, 1895.]

JAMES F. COSBY, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Trust—Limitation of Time in Decree of Enforcement—Cessation of Right.—In an action to enforce a trust and to compel a conveyance, the court may fix a limitation in the decree of enforcement, within which money must be paid or tendered as a condition of the conveyance, and may provide that, in default of payment or tender made on or before a day fixed in the decree, all the right, title, and interest of the plaintiff shall cease and be at an end, and that thereafter neither of the defendants shall be held as a trustee in respect to any of the matters mentioned in the decree, and the parties may be concluded by such limitation.

Id.—Subsequent Oral Modification—Power of Court—Contempt.—It is doubtful whether the court has power, at a date subsequent to the time fixed by its decree, to make a material modification and change in the terms of a decree fixing a time for a payment or tender, after which the rights of the plaintiffs are to cease, if no payment or tender is made, by extending the time for a tender after the plaintiffs have forfeited their rights under the decree by its original terms; but where such attempted modification of the decree was merely announced orally from the bench, and not entered of record, the court has no jurisdiction, upon a subsequent tender by the plaintiff and refusal of the defendants to make a conveyance, to punish the defendants for contempt of court for such refusal.

Id.—Criminal Offense—Constructive Contempt—Order not of Record.—Contempt of court is a specific criminal offense, and a party cannot be held guilty of constructive contempt for refusing to comply with a mere verbal announcement of a direction or order having no existence of record.

Id. —Decrees of Court — Requirement of Writing — Record — Oral Modification.—Decrees of court are required to be in writing and remain of record, and those affected thereby have a right to stand by such record, and, unless a change is made in the record, and knowledge brought home to the party sought to be charged thereby, he has a right to regard the decree as entered as the final direction of the court, and to disregard any oral modification thereof having only a mere potential existence.

Id.—Nunc Pro Tunc Order—Jurisdiction.—The court cannot acquire jurisdiction to punish a defendant for contempt by entering a *nunc pro tunc* order modifying the decree at the hearing of an order to show cause why the defendant should not be punished for contempt, so as to make the record conform to a prior verbal order not previously entered of record.

Id.—Judgment for Contempt—Writ of Prohibition.—There is no appeal from a judgment of contempt, and where such judgment, although entered, has not yet been fully carried out or executed, a writ of prohibition will lie to prevent further proceedings of the court in the matter of the contempt.

APPLICATION in the Supreme Court for a writ of prohibition to the Superior Court of Los Angeles County. J. W. McKINLEY, Judge.

The facts are stated in the opinion of the court.

*John D. Pope*, for Petitioner.

As long as anything remains to be done under the order or judgment, the writ of prohibition is appropriate, not only to arrest further proceedings, but to annul what has already been done under the order or judgment. (*Havemeyer* v. *Superior Court*, 84 Cal. 329, 389; 18 Am. St. Rep. 192. See, also, *Ex parte Gordon*, 92 Cal. 478, 481; 27 Am. St. Rep. 154.) Unauthorized conditions accompanying a tender render it of no avail. (Civ. Code, sec. 1494; *Woody* v. *Bennett*, 88 Cal. 241; *Jones* v. *Shuey* (Cal., April 3, 1895), 40 Pac. Rep. 17; Civ. Code, secs. 1494, 1499, 1501; Code Civ. Proc., sec. 2076.) The order made upon the minute-book, on April 2, 1895, as of date August 1, 1893, by which it was proposed to give to the Kofoeds until August 3, 1893, to make payment, was without jurisdiction, and was utterly null and void, because nothing appeared upon the records in the action to show any error or omission, and the judgment requiring payment to be made by the thirty-first day of July, 1893, could not be amended by a mere minute order, even if the court possessed jurisdiction to make an amendment. (*Swain* v. *Naglee*, 19 Cal. 127; *De Castro* v. *Richardson*, 25 Cal. 49; *Hegeler* v. *Henckell*, 27 Cal. 492; *Estate of Schroeder*, 46 Cal. 305, 316; *Dreyfuss* v. *Tompkins*, 67 Cal. 339; *Wiggin* v. *Superior Court*, 68 Cal. 401; *Carpenter* v. *Superior Court*, 75 Cal. 596; *Fallon* v. *Brittan*, 84 Cal. 511; *Lang* v. *Superior Court*, 71 Cal. 491; *Egan* v. *Egan*, 90 Cal. 15.) Where the judgment declares time to be essential, the payment must be made within the time limited. (*Clark* v. *Hall*, 7 Paige, 382; *Keller* v. *Lewis*, 53 Cal. 113; *Barsolou* v. *Newton*, 63 Cal. 223; *Bremer* v. *Calumet etc. Canal Co.*, 127 Ill. 464; *Burgess* v. *Ruggles*, 146 Ill. 506; *Hansbrough* v. *Peck*, 5 Wall. 497, 506.)

*George R. Du Bois, Bicknell & Trask,* and *T. M. Stewart,* for Respondent.

Mere overstepping of its authority by the court in a portion of its judgment, or any other error in its proceedings, is not ground for prohibition. (*Ex parte Pennsylvania,* 109 U. S. 174; *People* v. *Court,* 43 Barb. 278; High on Extraordinary Legal Remedies, 768; *State* v. *Superior Court,* 3 Wash. 705; *Ex parte Ferry Co.,* 104 U. S. 519.) The court has jurisdiction to make a *nunc pro tunc* amendment to make the minutes show what the court actually did. (*Niles* v. *Edwards,* 95 Cal. 47; *Von Schmidt* v. *Widber,* 99 Cal. 515; *In re Wight,* 134 U. S. 136; *Conklin* v. *Elevated R. R. Co.,* 13 N. Y. Supp. 782.) A writ of prohibition never issues to review what has already been done, nor to prevent the doing of an act which is not threatened to be done. (*Coker* v. *Superior Court,* 58 Cal. 178; *Hull* v. *Superior Court,* 63 Cal. 179; *Havemeyer* v. *Superior Court,* 84 Cal. 390; 18 Am. St. Rep. 192; *More* v. *Superior Court,* 64 Cal. 346.)

Van Fleet, J.—Application for prohibition to prevent respondent from proceeding to enforce against petitioner a judgment convicting him of contempt for refusal to comply with a decree of said court.

The material facts appearing from the very voluminous petition and answer may be briefly stated thus: John C. Kofoed and Lillie H. Kofoed brought an action in said superior court against the petitioner, Cosby, and one Samuel B. Gordon, alleging that said Gordon, while employed and acting as their attorney, for the purpose, among others, of procuring the settlement and satisfaction of a certain judgment held by said Cosby against the Kofoeds, entered into a contract with Cosby, without the knowledge of the Kofoeds, whereby it was agreed that for a consideration of two hundred dollars, to be paid Cosby by Gordon, Cosby should assign said judgment to Gordon for the latter's own benefit; that under this agreement Cosby retained the title to the judgment in his own name, and, at the direction of Gordon, pro-

cured an execution to be issued thereunder, and levied upon certain real estate of the Kofoeds, which was sold thereunder and the title bought in by Cosby, to be held by him for Gordon until the latter should pay the said consideration of two hundred dollars. And they prayed that Gordon be held their trustee as to all rights acquired by him under said agreement.

As a result of the trial of said action, a decree was entered in said court, by which it was adjudged that Gordon held whatever rights he had acquired under his contract with Cosby for the benefit of the Kofoeds, and that the latter should be held subrogated to all the rights of Gordon thereunder, provided they should pay or tender to Gordon, on or before the thirty-first day of July, 1893, the sum of seventy-nine dollars and fifty cents, paid out by Gordon in the transaction; and further directed that, upon the payment or tender by the Kofoeds to Cosby of said consideration of two hundred dollars, agreed to be paid him by Gordon, Cosby should receive the same in full satisfaction of said judgment so assigned by him to Gordon, and should convey to the Kofoeds the real property bought in by him at said execution sale. The decree expressly provided "that, unless the plaintiff shall pay or tender said sum to the said James F. Cosby, and shall also pay to the said Gordon the sums hereinbefore mentioned as payable to him, on or before the thirty-first day of July, 1893, all the right, title, and interest of plaintiffs, or either of them, in and to the said contract and premises hereinbefore mentioned shall cease and be at an end, and thereupon and thereafter neither the said Gordon nor the said Cosby shall be held as trustee for plaintiffs, or either of them, with respect to any of the matters mentioned in this decree."

Intermediate the entry of said decree, which was on July 17, 1893, and the thirty-first day of July, 1893, the Kofoeds made an absolute transfer and assignment of their rights and interest under said decree to one Bradshaw. On the last-named date Bradshaw tendered to, and offered to pay, Gordon and Cosby the amounts re-

spectively required by the decree, but coupled with such tender the condition that Cosby and Gordon execute a conveyance which in its terms was not in accord with the directions and requirements of said decree, and by reason of this condition said tender was refused. Thereupon, on the same date, Bradshaw procured from said court a citation against Gordon and Cosby to show cause on the next day, August 1st, why they should not be held guilty of contempt for disobedience of said decree. A hearing on said citation was accordingly had, but Gordon and Cosby were held not guilty of contempt in the premises, and the rule was discharged. Thereafter, on August 2, 1893, the Kofoeds, who had on August 1st received a reassignment from Bradshaw of their rights under the decree, themselves made a tender, which it seems to be conceded was, except as to the matter of time, in conformity with the decree. This tender was, however, refused, upon the ground that it came too late, and that the rights of the Kofoeds, under the terms of the decree, were forfeited and lost. About this time Cosby and Gordon took an appeal from said decree to this court, but it does not appear that such appeal was so perfected as to stay proceedings under the decree, and subsequently the appeal was voluntarily dismissed.

No further steps appear to have been taken by the Kofoeds in the matter until on or about the twenty-fifth day of January, 1895, when they caused a notice in writing to be served upon Cosby and Gordon of their readiness, and renewing their offer to pay the amounts required by the decree, with interests, etc., upon the execution of the required instruments of conveyance. This offer being likewise refused, upon the ground that it came too late, the Kofoeds sued out a second citation against Cosby and Gordon, requiring them to show cause before said superior court on the second day of April, 1895, why they should not be punished for contempt in refusing to comply with said decree. Up to this time the decree had remained of record as originally

entered, requiring the payment or tender of the amounts specified therein to be made on or before July 31, 1893, in default of which the rights of the Kofoeds thereunder should be held forfeited, and there was nothing of any character appearing upon the records of said court to indicate or publish the fact that any change or modification in its terms had ever been had or attempted therein.    Upon the hearing of said last-mentioned citation, however, there was evidence offered and received by the court, on behalf of the Kofoeds, tending to show that at the hearing of the first citation for contempt, above noted, had on August 1, 1893, the judge of said court had announced orally from the bench that he would grant the Kofoeds three days further time from said thirty-first day of July, named in the decree, within which to make a further tender, but that the clerk had failed to make any note of such suggestion or order. This evidence was controverted by evidence on behalf of Cosby and Gordon tending to show that no such order or suggestion had been made, and that, if made, that the latter never had or received any knowledge thereof; but the court, on said April 2, 1895, directed its clerk to enter an order *nunc pro tunc* as of August 1, 1893, granting to said Kofoeds such extension of three days. Thereupon the court proceeded with the hearing of said citation, and found the petitioner guilty of contempt in failing to comply with said decree, as thus modified by said *nunc pro tunc* order, and adjudged that petitioner pay a fine, and, in addition, be incarcerated in the county jail until he should comply with the requirements of said decree.

The execution of the judgment having been temporarily suspended by the court, petitioner has sued out this writ to prohibit further proceedings thereunder, claiming that the action of the court in the premises was beyond its jurisdiction and void.

We are of opinion that the position of the petitioner must be sustained.    It is contended with much force that the superior court had no authority to change or

amend its decree at the time and in the manner attempted by the order made from the bench on August 1, 1893, extending the time of the Kofoeds for making tender thereunder.   There is no question as to the power of the court at all times, in a proper case, to direct any amendment or correction in a judgment, to the end that the judgment as entered may express that which was rendered, and the record thus made to speak the fact.   Mere clerical misprisions or omissions are sub. ject to the correction of the court at any time by an order entered for that purpose.   But the act of the court in this instance does not fall within that category. There was here no question but that the judgment, as entered, was exactly that rendered by the court in the first instance.   The attempt made was to work a material modification and change in the terms of the decree affecting the rights of the parties thereunder, without formal motion therefor, and more than ten days after its entry, and that at a time when, by the strict terms of the decree, the parties in whose favor the modification was made had forfeited their rights thereunder. In fact, at the date when the allotted time within which a tender was to be made elapsed, the rights of those parties in the premises were vested in a third party, and they had at that time no interest therein.   Furthermore, time would appear to have been made of the essence of the right given under the decree.   By the decree, if the payment or tender was not made on or before the thirty-first day of July, 1893, "all the right, title, and interest of plaintiffs, or either of them, in and to the said contract and premises . . . . *shall cease and be at an end,"* etc.   That such limitation may be put by the court upon the exercise of such right, and the parties concluded thereby, there is no doubt.   (*'76 Land and Water Co.* v. *Superior Court,* 93 Cal. 139, 142.)   These considerations render it extremely doubtful as to the power of the court to make said modification at the time and in the manner attempted, but in the view we take it is unnecessary to determine that question.

Assuming that, as contended by respondent, its general power over its judgment is such that the order in question, although possibly erroneous, is not void, there is yet an obvious reason why the action of the court in convicting petitioner of contempt cannot be sustained. While the recitals of the contempt judgment are somewhat vague and general, and such as to leave it in doubt upon which particular act petitioner's contempt is based, it must, of necessity, rest upon one of the offers or tenders made subsequent to the order extending the time. While the attempted tender of Bradshaw is, like the others, recited in the judgment, it is perfectly obvious that no contempt could be predicated of that tender, since it was clearly insufficient, and petitioner was not in fault in rejecting it; in fact, the order of the court in discharging him from the charge of contempt based upon that refusal manifestly proceeded upon that theory. The contempt, therefore, must consist in petitioner's refusal to accept either the offer of August 2, 1893, or that of January 25, 1895. As we have seen, at the date of these tenders there was no record evidence of any extension of the time for making such tender, but the decree stood unchanged as originally entered. It cannot be that one can be held guilty of a constructive contempt for refusing to comply with a direction or provision having no tangible existence of record, but consisting of a mere verbal announcement. Contempt of court is a specific criminal offense (*Ex parte Gould*, 99 Cal. 360; 37 Am. St. Rep. 57, and cases there cited); and it would be departing widely from the rule which so sacredly guards the personal liberty of the citizen to hold that a person may be convicted and punished criminally for a violation of a rule or direction having, if anything, but a mere potential existence. Decrees of court are required to be in writing, and remain of record, and those affected thereby have a right to stand upon such record. It was necessary, if the court had power, under the circumstances, to change the decree in the particular in question, to have such change made of record,

and knowledge thereof brought home to the petitioner on making the subsequent tender.    Until that was done the petitioner had a right to regard the decree as entered as the final direction of the court in the premises.

Some question seems to be made as to prohibition being the proper remedy, but, under the circumstances of this case, we have no doubt that it is.    It is conceded that there is no appeal, and the judgment of contempt, although entered, has not yet been carried out or executed.    In *Havemeyer* v̄. *Superior Court*, 84 Cal. 327, 18 Am. St. Rep. 192, the office of this writ is exhaustively discussed, and it is there held that, while the operation of the writ is primarily and principally preventive, rather than remedial, and is excluded where the action of the inferior tribunal is fully completed and nothing remains to be done under its void order, yet, if its action is only partially and not fully completed, further proceedings may be stayed by prohibition.

In the view we have taken of the question discussed, the various other objections to the validity of the judgment in question need not be here considered.

It results that a peremptory writ should issue as prayed, and it is so ordered.

BEATTY, C. J., HENSHAW, J., McFARLAND, J., HARRISON, J., and GAROUTTE, J., concurred.

Mr. Justice TEMPLE, not having heard the argument, did not participate in the foregoing decision.