[No. A076918. First Dist., Div. Two. Sept. 16, 1997.]

VIRGIL LAMONT HAMILTON, a Minor, etc., Plaintiff and Respondent,
v.
UNTO J. LAINE et al., Defendants;
DEPARTMENT OF DEVELOPMENTAL SERVICES, Movant and
Appellant.

**COUNSEL**

Daniel E. Lungren, Attorney General, Stephanie Wald and Asher Rubin, Deputy Attorneys General, for Movant and Appellant.

Allen H. Fleishman and Timothy C. Brugh for Plaintiff and Respondent.

## Opinion

### RUVOLO, J.—

#### Introduction

This is an appeal from an order amending a trust instrument nunc pro tunc. The issue in this appeal is whether the trial court, in entering its order nunc pro tunc, was correcting the original order establishing the trust because it had not been correctly memorialized through clerical inadvertence or mistake, or whether, as claimed by movant and appellant Department of Developmental Services (DDS) the court was attempting to remedy a judicial error or omission in the entry of its original order, and in doing so, materially changed the order originally rendered. We conclude the order nunc pro tunc exceeded the limited permissible purpose, and therefore was erroneously entered. Consequently, we hold the order should be reversed.

#### Background Facts

In the summer of 1982, Virgil Lamont Hamilton (the minor) suffered severe brain damage arising out of a swimming pool accident. He was left severely disabled and will require extensive medical treatment for the rest of his life. Since October 26, 1982, he has resided and received skilled care at Agnews Developmental Center (Agnews), a state facility.

On March 23, 1984, an order was entered approving the compromise of the minor's claim against defendants Unto J. Laine and Anneli S. Laine, the property owners where the accident occurred. The compromise resulted in a substantial monetary settlement. Following payment of attorney fees and full satisfaction of liens for services provided to the minor, a lump-sum payment of $400,000 was ordered placed into a "medical trust fund." The trust instrument provides "the trustee shall pay promptly all regular monthly medical expenses in connection with the reasonably necessary lodging, care, treatment, maintenance, health and welfare of the minor child herein." An additional $100,000 was used to purchase an annuity for the minor's benefit. On April 1, 1985, by order of the court, the minor's compromise was amended and the trust restructured in a manner not significant here.

After the trust was established, the minor lost his eligibility for Medi-Cal, the state medical assistance program. Consequently, DDS paid for the minor's care at Agnews. In 1988, DDS requested reimbursement from the trust for approximately $306,510 in benefits paid on the minor's behalf. In 1989, the court ordered the trust to pay this claim. The trust made partial

payments to DDS totaling approximately $191,000. By doing so, all the funds held in trust were consumed. In April 1990, following exhaustion of the trust funds, the minor regained his Medi-Cal eligibility.

Thereafter, in 1992, the minor began receiving a monthly annuity payment of $5,000. The $5,000 monthly annuity payment was applied toward the minor's Medi-Cal "share of cost" in order to maintain his eligibility.[1] Thus, the monthly $5,000 annuity payment was first applied toward the minor's general care at Agnews, with Medi-Cal covering any expenses over and above the annuity amount.

In 1995, the minor, through his mother who serves as his guardian ad litem, requested the court authorize the restructuring of the trust to establish a special needs trust to receive the $5,000 monthly annuity payments. A special needs trust would allow the minor to maintain eligibility for public assistance to cover his basic needs and medical care, while allowing the settlement to be preserved for his extraordinary or "special" needs, such as rehabilitation, adaptive devices, and other medical and nonmedical care that is not covered by public assistance.

The practical effect of establishing a special needs trust in this case can be illustrated by the following example: Without the special needs trust, if the minor's monthly cost of care is $6,000 and the monthly annuity is $5,000, the annuity pays the first $5,000 of the minor's cost of care and Medi-Cal covers the $1,000 difference. With the special needs trust, Medi-Cal covers the entire $6,000 and the $5,000 monthly annuity can then be used for the minor's special needs.

However, Probate Code section 3604, subdivision (d), is of critical importance to this case. It requires all liens in favor of certain public agencies, including the DDS, "shall first be satisfied" before a special needs trust is established. At the time the special needs trust was requested, DDS had an outstanding claim for unreimbursed expenses in connection with the minor's care which, under the statute, would have to be satisfied before a special needs trust could be established.[2]

In view of the foregoing, the minor sought the order directing the funding of a special needs trust be entered nunc pro tunc effective April 1, 1985. In

[1] In order to maintain Medi-Cal eligibility, any income received by a beneficiary must first be applied to the beneficiary's cost of care and Medi-Cal covers the difference. (Cal. Code Regs., tit. 22, § 50090.)

[2] In 1996, DDS's claim for unreimbursed expenses was formalized in a lien in the approximate sum of $254,966.41 for the cost of medical services rendered to the minor at Agnews beginning July 1984 through March 1990. (See Welf. & Inst. Code, §§ 4431, 7513.) During this period of time, the minor was ineligible for Medi-Cal and his cost of care was

its moving papers, the minor requested "such order be entered retroactive to the date of the minor's compromise and therefore effective prior to the date that the benefits were provided for which DDS claims a lien." The minor explained, "if the order amending the minor's compromise is entered nunc pro tunc to the date of the minor's compromise, the trust would not be subject to any statutory liens since . . . the effective date of the order will predate the benefits giving rise to the DDS lien. Such an order would be in the interest of justice since [the minor] has substantial special needs which are not currently covered by public benefits."

DDS opposed the motion and took the position that the special needs trust could not be funded until its lien was satisfied pursuant to Probate Code section 3604, subdivision (d). DDS argued the practical effect of the requested order would be to deny DDS its statutory right to reimbursement and excuse any further contribution from the minor's estate toward his cost of care. DDS contended, "Establishing a special needs trust to wipe out a statutory liability is unwarranted. If the trust relates back to 1985, that means there is no money available to pay the Department's charges for taking care of [the minor] between 1984-1990. In effect, that means the Court is wiping out the Department's statutory lien and acting contrary to the Probate Code mandate that such liens must be paid before a trust is established."

On October 7, 1996, the court granted the relief prayed for, i.e., the establishment of a special needs trust which relates back nunc pro tunc to April 1, 1985. The court further required the trust be used only for the minor's special needs, that it be subject to the continuing jurisdiction of the court, and that periodic accounts be filed. The court also directed that upon the minor's death any funds remaining in the special needs trust be applied to satisfy all outstanding liens of any state agency, including DDS, which has provided benefits for the minor. DDS filed a motion for reconsideration which was denied. This appeal followed.

## DISCUSSION

■ The respective equity of each party's position is argued at length in the briefs. The minor emphasizes that, by establishing the special needs trust nunc pro tunc in order to extinguish any immediate obligation to pay DDS, the court has finally allowed the minor to receive some benefit from the litigation that was settled in his favor. He explains that because his basic needs will now be covered entirely by Medi-Cal, the annuity funds can be used to defray the special needs expenses necessary for him reside at home

---

entirely funded by the state. At no point in these proceedings has the minor disputed this liability.

with his mother. On the other hand, DDS argues that if the equities are weighed, "the scales tip in favor of the taxpayers." DDS emphasizes "the pernicious result" of the court's nunc pro tunc order is to defeat the statutory right of DDS to reimbursement for the minor's care *before* a special needs trust is established as required by Probate Code section 3604, subdivision (d). DDS submits that "this cute way of sidestepping appellant's lien is an abuse of the nunc pro tunc power."

While each party's argument is compelling in its own way, the resolution of this case does not turn on which side has the more persuasive equitable argument. Instead, it turns on well-established principles limiting the use of nunc pro tunc entries to correct an error or omission in the original order or judgment.

The scope of orders and judgments nunc pro tunc in California has consistently been described by our Supreme Court in the following terms: "A court can always correct a clerical, as distinguished from a judicial error which appears on the face of a decree by a nunc pro tunc order. [Citations.] It cannot, however, change an order which has become final even though made in error, if in fact the order made was that intended to be made. . . . 'The function of a nunc pro tunc order is merely to correct the record of the judgment and not to alter the judgment actually rendered—not to make an order now for then, but to enter now for then an order previously made. The question presented to the court on a hearing of a motion for a nunc pro tunc order is: What order was in fact made at the time by the trial judge?' " (*Estate of Eckstrom* (1960) 54 Cal.2d 540, 544 [7 Cal.Rptr. 124, 354 P.2d 652], italics omitted.) The court went on to hold nunc pro tunc orders may not be made to "make the judgment express anything not embraced in the court's decision, even though the proposed amendment contains matters which ought to have been so pronounced. [Citations.]" (*Ibid.*) "It is only when the form of the judgment fails to coincide with the substance thereof, as intended at the time of the rendition of the judgment, that it can be reached by a corrective nunc pro tunc order." (*Id.* at p. 545; accord, *Martin v. Martin* (1970) 2 Cal.3d 752, 761, fn. 12 [87 Cal.Rptr. 526, 470 P.2d 662]; *Estate of Careaga* (1964) 61 Cal.2d 471, 474 [39 Cal.Rptr. 215, 393 P.2d 415]; *Estate of Goldberg* (1938) 10 Cal.2d 709, 714-715 [76 P.2d 508].)

As amplified in 46 American Jurisprudence Second (1994) Judgments, section 166 at pages 494-495: "The general rule is that an amendment of the record of a judgment, and a nunc pro tunc entry of it, may not be made to correct a judicial error involving the merits, or to enlarge the judgment as originally rendered, *or to supply a judicial omission or an affirmative action which should have been, but was not, taken by the court, or to show what the*

*court might or should have decided, or intended to decide, as distinguished from what it actually did decide,* even if such failure is apparently merely an oversight. [¶] The power of the court in this regard is to make the journal entry speak the truth by correcting clerical errors and omissions, and it does not extend beyond such function. Although grounds may exist for opening, modifying, or vacating the judgment itself, in the absence of such grounds, the court may not, under the guise of an amendment of its records, revise or change the judgment in substance and have such amended judgment entered nunc pro tunc. . . . *A nunc pro tunc order is not appropriate to rescue subjective judicial intentions when a judge failed in any way to act on those intentions in entering judgment.*" (Italics added, fns. omitted.)

The minor contends here, as he did below, that the purpose of the nunc pro tunc order entered by the trial court was to preserve what was left of the settlement for the minor's continuing needs and that the challenged order accomplished that purpose. However, in so arguing, the minor misconceives the limited function of a nunc pro tunc order. To summarize, it is not proper to amend an order nunc pro tunc to correct judicial inadvertence, omission, oversight or error, or to show what the court might or should have done as distinguished from what it actually did. An order made nunc pro tunc should correct clerical error by placing on the record what was actually decided by the court but was incorrectly recorded. It may not be used as a vehicle to review an order for legal or judicial error by "correcting" the order in order to enter a new one. (See generally, *City of Los Angeles* v. *Superior Court* (1968) 264 Cal.App.2d 766, 771 [70 Cal.Rptr. 826]; *Estate of Harris* (1962) 200 Cal.App.2d 578, 591-592 [19 Cal.Rptr. 510]; *Felton Chemical Co.* v. *Superior Court* (1939) 33 Cal.App.2d 622, 627 [92 P.2d 684].)

There is no written or oral evidence whatsoever that the trial court, in entering the original order in 1985 approving the "medical trust fund," intended to authorize a trust that would function like the special needs trust in the corrected nunc pro tunc order. Instead, the record contains several statements to the contrary made by the trial court at the time the nunc pro tunc order was made. After stating she was going to issue an order authorizing the special needs trust nunc pro tunc dating back to 1985, the judge expressed her reasons as follows: "And this *should have been caught, theoretically.* You had a wonderful judge in Judge Perly, very obviously, and this is something new on the horizon, and it's something that developed since Judge Perly left practice, . . . and it should have been caught. And I have no doubt at all, *had this been called to the court's attention,* that it would have been caught by the court, and they would only approve the special [needs] trust." (Italics added.) In responding to DDS's request for reconsideration of this ruling, the minor explained, "In its ruling on this

motion, this Court recognized that, at the time of the minor's compromise, the court and the parties intended to preserve settlement proceeds for [the minor] and failed to realize that *the settlement trust was not properly structured to meet that end.* The Court expressly found that the issue of a special needs trust *should have been 'caught' by the court,* and, *had the issue been brought to the court's attention,* that the court would have only approved a properly drafted trust. By entering the order nunc pro tunc, the Court applied its equitable *power to rectify the parties' and the court's failure to establish a properly drafted trust.*" (Italics added, fn. omitted.)

From these remarks alone, it is patently obvious the nunc pro tunc order was not made to cure a clerical error or omission in the order originally rendered, but was made solely to remedy perceived judicial error. In issuing an order nunc pro tunc more than a decade later, we conclude the trial judge was attempting to redress what she believed was a judicial omission. It is apparent that the effect of the nunc pro tunc order was to ensure the special needs trust would predate the monetary disbursements made by DDS in the minor's behalf, thereby rendering DDS without legal redress for its outstanding lien. In making its order nunc pro tunc, the court stated, "[I]f I do it nunc pro tunc as of then, there would be no lien in existence." Unlike a proper order entered nunc pro tunc, the nunc pro tunc order entered here materially altered the relative rights of the parties affected by the original order in a manner not contemplated.

The present case therefore, is distinguishable from those cases cited by the minor in which the record overall reflects a variance between the action taken and the action eventually recorded. (See *Carter* v. *J. W. Silver Trucking Co.* (1935) 4 Cal.2d 198, 205 [47 P.2d 733]; *Young* v. *Gardner-Denver Co.* (1966) 244 Cal.App.2d 915, 919-920 [53 Cal.Rptr. 522].) In its brief, and again at oral argument, the minor relied on *Hess* v. *Gross* (1943) 56 Cal.App.2d 529, 532 [133 P.2d 1], in support of the proposition that the court may exercise nunc pro tunc power to preserve the benefits of the litigation. The dispute in *Hess* arose out of an order requiring a stay bond pending appeal. The amount of the bond had been pronounced orally by the court in the original proceeding, however, the court inadvertently omitted the amount in the written order. (*Id.* at p. 532.) When the matter came to the attention of the trial court the judge entered a revised order nunc pro tunc including the earlier omitted sum. The appellate court concluded the later entry of a new order was an appropriate exercise of the nunc pro tunc power pursuant to "usual rules permitting a record to be so changed as to make it *speak the truth and show the actual facts . . . .*" (*Id.* at p. 533, italics added.) In so finding, the court broadly stated that courts "have always countenanced the entry of nunc pro tunc orders to preserve substantial rights, . . ." (*Id.* at

p. 532.) Despite the seemingly expansive language used, the contemplation of the appellate court was clearly to limit use of the nunc pro tunc power to restore that which was actually intended by the trial court. The holding in *Hess* cannot be legitimately interpreted to approve the making of a nunc pro tunc order for the purpose of declaring that which was not intended. (Accord, *City of Los Angeles* v. *Superior Court, supra,* 264 Cal.App.2d at p. 771.)

## DISPOSITION

We therefore reverse, concluding the trial court had no authority to grant the minor's request for an order nunc pro tunc, and we reinstate the order originally entered by the court. Each party to bear its own costs.

Haerle, Acting P. J., and Lambden, J., concurred.