NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 9 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ROSCOE WALKER, | No. 17-15666 |
| Plaintiff-Appellant, | D.C. No. 3:16-cv-06297-WHO |
| v. | |
| FORD MOTOR COMPANY, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

Argued and Submitted December 21, 2018
San Francisco, California

Before: M. SMITH, NGUYEN, and BENNETT, Circuit Judges.

Roscoe Walker appeals the district court's dismissal of his suit against Ford

Motor Company for breach of a settlement agreement reached in state court

personal injury litigation. The district court had jurisdiction under 28 U.S.C.

§ 1332. *See Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015). We have

---

*     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

jurisdiction under 28 U.S.C. § 1291.  Reviewing de novo, *see Colony Cove Props., LLC v. City Of Carson*, 640 F.3d 948, 955 (9th Cir. 2011), we affirm.

California's intermediate appellate courts do not permit "attorney's fees expended in the continuation of the underlying action" as damages for breach of a settlement agreement.  *Olson v. Arnett*, 169 Cal. Rptr. 629, 633 (Cal. Ct. App. 1980); *see also Navellier v. Sletten*, 131 Cal. Rptr. 2d 201, 211–12 (Cal. Ct. App. 2003).  Where "there is relevant precedent from the state's intermediate appellate court" on a matter of state law, we must follow it unless we find "convincing evidence that the state's supreme court likely would not follow it."  *Reese v. County of Sacramento*, 888 F.3d 1030, 1042 (9th Cir. 2018) (quoting *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007)).

Even if the California Supreme Court were to allow such fees and distinguish them from fees incurred in the subsequent breach action, as advocated in the dicta upon which the dissent relies, *see Copenbarger v. Morris Cerullo World Evangelism, Inc.*, 239 Cal. Rptr. 3d 838, 845–46 (Ct. App. 2018), *review denied* (Cal. Feb. 27, 2019) (No. S253151), that would not change the result here.  Walker cannot recover the fees at issue, which were expended before the state court determined that there was an enforceable settlement agreement, at a time when the court's contrary ruling was still in force.  *See Cosby v. Superior Court*, 42 P. 460, 462 (Cal. 1895) (explaining that parties who complied with court orders

2

in effect at the time cannot incur liability for retrospectively violating court order entered nunc pro tunc); *see also Hamilton v. Laine*, 67 Cal. Rptr. 2d 407, 411 (Ct. App. 1997) (finding invalid nunc pro tunc order that "materially altered the relative rights of the parties affected by the original order in a manner not contemplated").

Nor is Walker entitled to damages for mental suffering caused by Ford's alleged breach, which "are generally not recoverable in an action for breach of an ordinary commercial contract in California." *Erlich v. Menezes*, 981 P.2d 978, 987 (Cal. 1999). That general rule applies even if a party suffers through "the mental stress of litigating." *MacCharles v. Bilson*, 231 Cal. Rptr. 155 (Cal. Ct. App. 1986). Because Walker has not demonstrated any exceptions to that general rule, he is not entitled to damages arising from emotional distress and mental suffering.

**AFFIRMED.**

*Walker v. Ford Motor Co.*, 17-15666

BENNETT, Circuit Judge, dissenting in part:

I agree that Walker is not entitled to recover damages for mental suffering, but I would certify to the California Supreme Court the question of whether he is entitled to recover attorneys' fees. Thus, I respectfully dissent from the Majority's decision to affirm the district court's holding concerning attorneys' fees. I also dissent from the Majority's holding that, as a matter of California law, even if the California Supreme Court were to hold that plaintiffs like Walker are entitled to recover the kinds of fees at issue here, Walker would still not be entitled to recover them.

## I.

Walker alleges that Ford breached its agreement with him—under section 998 of the California Code of Civil Procedure—to settle his personal injury action. Walker now seeks to recover, as damages, the attorneys' fees he incurred when forced to continue litigating the action that was the subject of the agreement. He does not seek attorneys' fees incurred in enforcing the agreement or in bringing this action.

The Majority relies on *Olson v. Arnett*, 169 Cal. Rptr. 629 (Ct. App. 1980) and *Navellier v. Sletten*, 131 Cal. Rptr. 2d 201 (Ct. App. 2003) in holding that Walker cannot recover attorneys' fees as a measure of damages. The Majority

1

implies that, because the California Supreme Court has not spoken on this issue, we must follow *Olson* and *Navellier*, which are intermediate court of appeals decisions, unless "there is convincing evidence" that the California Supreme Court would decide this case differently. *See Westlands Water Dist. v. Amoco Chem. Co.*, 953 F.2d 1109, 1111 (9th Cir. 1991) (quoting *State Farm Fire & Casualty Co. v. Abraio*, 874 F.2d 619, 621 (9th Cir. 1989)).

I would add two caveats. First, serious doubt concerning whether *Olson* and *Navellier* were correctly decided—and thus whether the California Supreme Court would follow them—is reason enough to justify certifying this question. *See, e.g.*, *Klein v. United States*, 537 F.3d 1027, 1032 (9th Cir. 2008), *certified question answered*, 235 P.3d 42 (Cal. 2010) (certifying a question to the California Supreme Court because of doubts over whether the relevant intermediate court of appeals decision was correct); *Munson v. Del Taco, Inc.*, 522 F.3d 997, 1002 (9th Cir. 2008), *certified question answered*, 208 P.3d 623 (Cal. 2009) (same).

Second, under these circumstances we are bound by decisions of the California Supreme Court only. *See McKown v. Simon Prop. Grp. Inc.*, 689 F.3d 1086, 1091 (9th Cir. 2012), *certified question answered*, 344 P.3d 661 (Wash. 2015). Where, as here, there is no such decision, we must use our "best judgment" in predicting how the California Supreme Court would decide this issue. *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980). We

2

look to "all available data" to make that prediction. *T-Mobile USA Inc. v. Selective Ins. Co. of Am.*, 908 F.3d 581, 586 (9th Cir. 2018) (quoting *Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982)). That includes not only intermediate appellate court decisions but also "decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990).

The Majority sees no convincing reason why the California Supreme Court would decide this case differently than *Olson* and *Navellier*. I see two.

First, in my view *Olson* and *Navellier* are poorly reasoned and likely wrong, and they did not address what I see as the key issue here. Although the Majority cites both *Olson* and *Navellier*, *Navellier* quotes *Olson* extensively without offering much analysis, and thus I focus on the *Olson* holding. *See Navellier*, 131 Cal. Rptr. 2d at 211–12.

It is true that in *Olson* the party seeking attorneys' fees sought fees "expended in the continuation of the underlying action and in enforcing the settlement agreement." *Olson*, 169 Cal. Rptr. at 633. In its analysis, however, the *Olson* court spoke only of attorneys' fees incurred enforcing the settlement agreement, and thus it failed to make the important distinction between fees incurred enforcing a settlement agreement and fees incurred in continuing to litigate the action that was the subject of the agreement. *See id.* at 634.

3

Second, a different California intermediate court of appeals very recently emphasized the distinction that the *Olson* and *Navellier* courts ignored, and it criticized *Olson* and *Navellier* directly. In *Copenbarger v. Morris Cerullo World Evangelism, Inc.*, 239 Cal. Rptr. 3d 838, 841–42 (Ct. App. 2018), *reh'g denied* (Nov. 13, 2018), *review denied* (Feb. 27, 2019), a trustee brought a breach of contract action and sought, as damages, attorneys' fees it incurred when it was forced to continue litigating the action that was the subject of the breached settlement agreement. Although the court ultimately disposed of the case on different grounds, it stated that there is a difference "between attorney fees sought *qua* damages and attorney fees sought *qua* costs of suit."[1] *Id.* at 845. That is the precise distinction at issue in this case. The fees in *Copenbarger* were fees sought "*qua* damages" because they were incurred litigating the action that was the subject of the breached settlement agreement. *Id.* They were not the costs of suit because "they were not costs incurred in the action to *enforce* the Settlement Agreement." *Id.* (emphasis added).

In addition, the court not only emphasized that it was not bound by *Olson* or *Navellier* but also—because *Olson* and *Navellier* failed to recognize this important

---

[1] The distinction between attorneys' fees as "costs of suit" and attorneys' fees sought as damages is an obvious one that is often recognized. *See, e.g.*, Fed. R. Civ. P. 54(d)(2)(A) ("A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.").

distinction—expressed doubt as to whether those cases were correctly decided in the first place:  "We question whether *Olson* and *Navellier* were correctly decided because both opinions fail to recognize the difference between attorney fees sought as damages and attorney fees sought as costs of suit."  *Id.* at 846.  The court went further and specifically stated that, the contrary holdings of *Olson* and *Navellier* notwithstanding, "it appears to us attorney fees may be recovered as damages for breach of contract."  *Id.*  Because the court resolved the case on a different ground, however, it did not expressly hold contrary to *Olson* or *Navellier*.

The relevant facts of this case are nearly identical to the facts in *Copenbarger*, insofar as they implicate the holdings of *Olson* and *Navellier* relied on by the Majority.  Walker alleges that he and Ford entered into an agreement to settle a personal injury action.  When Ford allegedly breached that agreement, Walker was forced to incur fees continuing to litigate the action that was the subject of the agreement.  Had Ford performed under the alleged agreement, Walker would not have incurred those fees.  Thus, in my view the fees that Walker seeks to recover are damages that he alleges were proximately caused by Ford's alleged breach, and the California Supreme Court would likely hold that they are recoverable as such.  *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 460 (Cal. 1994) (noting that a non-breaching party is entitled to "receive as nearly as possible the equivalent of the benefits of performance"); *see also T. M.*

5

*Cobb Co. v. Superior Court*, 682 P.2d 338, 342 (Cal. 1984) (in bank) (noting that "general contract law principles should apply to section 998 offers and acceptances" when "such principles neither conflict with the statute nor defeat its purpose").

In sum, if out-of-jurisdiction cases, treatises, and restatements are relevant data points in our inquiry, *see In re Kirkland*, 915 F.2d at 1239, then surely we should pay close attention to persuasive dicta from a brand new, on-point California appellate court decision that provides sound analysis and directly calls into question the validity of *Olson* and *Navellier*, the much older cases upon which the Majority relies. The California Supreme Court has not spoken on this issue, and of the three California intermediate appellate court cases to address it—*Olson*, *Navellier*, and *Copenbarger*—*Copenbarger* has the best analysis and is by far the most recent.

This issue is, of course, potentially determinative of the outcome of this case.[2] Out of deference to the California Supreme Court, and to help ensure that our decision in this case is correct concerning a matter of state law, I would give the California Supreme Court the opportunity to definitely speak to this determinative issue. *See Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir. 2003).

---

[2] California Rule of Court 8.548(a)(1) requires as a condition of certification that the decision by the California Supreme Court "could determine the outcome of a matter pending in the requesting court."

6

## II.

The Majority also concludes that—as a matter of California law—"[e]ven if the California Supreme Court were to allow such fees and distinguish them from fees incurred in the subsequent breach action . . . that would not change the results here. . . . Walker cannot recover the fees at issue, which were expended before the state court determined that there was an enforceable settlement agreement, at a time when the court's contrary ruling was still in force." Maj. Op. at 2 (citation omitted). But no California case, including the two cases that the Majority cites, has ever so held. And there was no specific "contrary" ruling by the superior court here, i.e., no specific ruling that there was no enforceable settlement agreement.

The Majority relies on *Cosby v. Superior Court*, 42 P. 460, 462 (Cal. 1895) and *Hamilton v. Laine*, 67 Cal. Rptr. 2d 407, 411 (Ct. App. 1997), but neither has any bearing on this case.

*Cosby* was decided nearly one hundred and twenty-five years ago. Neither the parties nor the district court cited *Cosby*—indeed I am not aware of any case in the United States that has cited *Cosby* since 1969. And none of the cases that have cited *Cosby* have done so in connection with a section 998 agreement. That is for good reason: *Cosby* has nothing to do with section 998 agreements or any other relevant facts of this case.

7

In *Cosby*, a superior court entered a settlement decree under which John and Lillie Kofoed were supposed to pay Cosby $200 on or before July 31, 1893, triggering Cosby's obligation to convey certain real property to the Kofoeds. *Id.* at 48. The Kofoeds tendered the $200 on August 2, 1893, rather than on or before July 31, 1893. *Id.* at 49. Cosby refused the late tender. *Id.* Two years later, the Kofoeds sued Cosby for failure to comply with the court's decree, arguing that two years earlier the superior court judge had orally modified the decree, from the bench, to allow the Kofoeds three extra days to tender the $200, but that the clerk of court failed to "make any note" of the modification. *Id.* at 50.

Even though Cosby submitted evidence that the superior court never made any such oral modification, the superior court "directed its clerk to enter an order nunc pro tunc as of [A]ugust 1, 1893, granting to said Kofoeds such extension of three days." *Id.* After retroactively modifying the material terms of the written consent decree, the court found Cosby guilty of criminal contempt for failing to accept the August 2, 1893 tender, and it ordered him incarcerated. *Id.*

Cosby filed a writ of prohibition in the California Supreme Court. The court granted the writ and held that Cosby could not

> be held guilty of a constructive contempt for refusing to comply with
> a direction or provision having no tangible existence of record, but
> consisting of a mere verbal announcement. Contempt of court is a
> specific criminal offense[,] and it would be departing widely from the
> rule which so sacredly guards the personal liberty of the citizen to
> hold that a person may be convicted and punished criminally for a

8

> violation of a rule or direction having, if anything, but a mere potential existence.

*Id.* at 52 (citation omitted).

I do not believe that *Cosby* has any bearing on this case. The question of whether there can be a binding section 998 agreement before a court enters judgment is unsettled in California and disputed by the parties. In fact the district court expressly declined to rule on this issue. The California Supreme Court has already held that general principles of contract law apply to section 998 offers and acceptances, *T. M. Cobb Co.*, 682 P.2d at 342, which suggests that there *could* be a binding settlement agreement after a valid section 998 offer is accepted but before the court enters judgment. *Cf. Canaan Taiwanese Christian Church v. All World Mission Ministries*, 150 Cal. Rptr. 3d 415, 421 (Ct. App. 2012) ("A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts."). Such a determination would likely turn on key facts that could be developed only once discovery becomes available.

In *Hamilton*, a child was severely disabled after a swimming-pool accident. 67 Cal. Rptr. 2d at 407. The child, through his guardian, sued the owners of the property on which the accident occurred, and a California trial court entered an order approving a compromise between the child and the owners. *Id.* The order provided for, among other things, the creation of a "medical trust fund." *Id.* Nine years later, the child's mother asked the court to restructure the trust to establish a

9

"special needs trust." *Id.* at 408. The court's restructuring of the compromise would be highly advantageous to the child: it would release the child from a substantial statutory liability owed to the California Department of Developmental Services, cover certain medical costs entirely, and leave the child with an additional $5,000 per month to be used for the child's special needs. *Id.* at 408–09. The court restructured the compromise and established a special needs trust that related back, nunc pro tunc, to the original order. *Id.*

On appeal, the California Court of Appeal noted that nunc pro tunc orders are properly used only to correct clerical errors, not to accomplish retroactively what the court "might or should have done as distinguished from what it actually did." *Id.* at 410. Because it was clear that the trial court used its equitable power to "rectify the parties' and the court's failure to establish a properly drafted trust," it made improper use of the nunc pro tunc order. *Id.* at 410–11. The Court of Appeal reversed, held that the trial court had no authority to grant the child's request for the nunc pro tunc order under these circumstances, and reinstated the original order. *Id.* at 411.

Like *Cosby*, *Hamilton* was not cited by the parties and is not relevant here. *Hamilton* is about a party's attempt to evade a statutory liability and gain additional benefits by retroactively changing the substance of a court-approved trust. The sole issue in *Hamilton* was whether the trial court made proper use of

10

the nunc pro tunc power, an issue not raised in this case. *Hamilton* is not a breach-of-contract case, much less a case about section 998 agreements.

The district court ruled on the basis of a single legal issue that is unsettled under California law. I believe the California Supreme Court would (and certainly could) decide that issue differently. And the Majority's alternative ground for affirmance—which is also based on an issue that is unsettled under California law and disputed by the parties—is not supported by either of the cases that the Majority cites.

I respectfully dissent.